**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-40002
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JUVENTINO ALVARADO-SALDIVAR,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

( August 17, 1995 )

Before GARWOOD, WIENER and PARKER, Circuit Judges.

PER CURIAM:

Appellant, Juventino Alvarado-Saldivar ("Alvarado") appeals his conviction for conspiracy, possession, and importation of marihuana and cocaine, with the intent to distribute. Appellant contends that the trial court's failure to suppress statements he made to officers during a custodial interrogation requires reversal of his convictions. We reject his argument and affirm the convictions.

FACTS

Around 8:30 a.m. on August 12, 1994, United States Border

Patrol Agents Terry Hunt ("Hunt") and Noe Vasquez ("Vasquez") were stationed in the brush along a trail used for alien and drug trafficking located near San Pedro, Texas, one mile from the Rio Grande River. They spotted Alvarado walking slowly north on the trail. Vasquez stepped out of the brush and, in Spanish, identified himself as immigration, told Alvarado to raise his hands, kneel down and keep quiet. Instead of complying with Vasquez's instructions, Alvarado turned and yelled back toward the south in Spanish, "Don't come. Go back. Don't come anymore," using the plural expression as if he were speaking to more than one person. Alvarado ultimately complied with the officer's requests, and Vasquez handcuffed him. Hunt arrived at the scene momentarily, and told Vasquez that he had seen two other men drop some bundles, and head south down the trail. The two men escaped, but Hunt retrieved the bundles, which tests later determined contained marijuana and cocaine.

After searching the area, Vasquez and Hunt took Alvarado to the Harlingen Border Patrol Station. Vasquez gave him *Miranda* warnings orally in Spanish at the time of his arrest and in written Spanish at the station. After providing some information and statements, Alvarado stated that he did not want to say anything else. Vasquez testified that he understood that Alvarado was invoking his right to remain silent. However, he asked Alvarado if he would answer questions on an "I-213 Deportation Form" regarding his identification and when he had crossed the river. After Alvarado had answered the questions on this form as to his name,

2

date and place of birth and address, he reiterated that he had nothing else to say. Alvarado and the bundles of drugs were turned over to Drug Enforcement Administration ("DEA") Agent Larry Councilman ("Councilman") and Investigator Ricardo Perez ("Perez") of the Cameron County, Texas Sheriff's Department.

Councilman and Perez transported Alvarado to the DEA office in Brownsville where he was photographed and finger printed by Agent William Newell ("Newell"). Newell testified that he asked whether Alvarado was willing to speak to law enforcement agents, and Councilman said that he was. Newell was not told that Alvarado had previously invoked his right to remain silent. In the subsequent interview, after Newell once again read him his rights in Spanish, Alvarado made the two statements that he now claims should have been suppressed. First, he said that he had been set up by the Border Patrol, because they were out to get him. Second he offered to become an informant for the DEA.

PROCEEDINGS BELOW

Alvarado filed a motion to suppress, claiming that the statements made to the arresting immigration officers and later to the agents of the DEA were not voluntarily given. At the pre-trial suppression hearing, Alvarado argued that his statements should be suppressed because he was injured during the arrest, and was thereby coerced into giving statements. The district court held that the government was not to elicit any evidence regarding an incident not relevant to this appeal, but denied the motion to suppress as to all other matters, finding "no indication whatsoever

3

that the statements made to the DEA agents were involuntarily made or that there was any coercion or force or any improper matters engaged in by the DEA agent." Alvarado's statements made to Newell were introduced into evidence at trial.

ADMISSIBILITY OF STATEMENTS MADE TO DEA AGENT NEWELL

Alvarado argues that the statements made to Newell should not have been admitted into evidence because law enforcement agents did not scrupulously honor his right to remain silent after he communicated his desire to cease talking, relying on *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

a. Standard of review.

Although Alvarado filed a motion to suppress all of his statements to law enforcement officers, including those that are the focus of this appeal, he argued to the district court that he was entitled to suppression because his statements were coerced by physical violence. He did not argue, either in his written motion or in open court, that use of his statements violated his Fifth Amendment right to remain silent under the test set forth in *Michigan v. Mosley*, 423 U.S. 96 (1975). Because Alvarado raised this question for the first time on appeal, we review it for plain error. FED. R. CRIM. P. 52(b); *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1441 (1995). An appellant who raises an issue for the first time on appeal has the burden to show that there is actually an error, that it is plain, and that it affects substantial rights. *United States v. Olano*, ___U.S.___, 113 S.Ct. 1770, 1777-78 (1993). If these factors are

4

established, the decision to correct the forfeited error is within the sound discretion of the court, and the court will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* 113 S.Ct. at 1778.

b. Did the district court plainly err?

Alvarado contends that because he invoked his right to remain silent while Vasquez was questioning him, any questions put to him later by Newell necessarily violated his Fifth Amendment rights. The admissibility of a defendant's statements made as a result of custodial interrogation after the defendant has invoked his right to remain silent is governed, as Alvarado contends, by *Michigan v. Mosley*, 423 U.S. 96 (1975). "The admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning was 'scrupulously honored.'" *Mosley*, 423 U.S. at 104, 96 S.Ct. at 326 (quoting *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966)). With no bright line test, courts must evaluate the facts of each case to determine if the resumption of police interrogation was consistent with scrupulous observance of the right to cut off questioning. *Wilcher v. Hargett*, 978 F.2d 872, 877 (5th Cir. 1992).

In *Mosley*, the Supreme Court found the following factors important in determining if the defendant's right to remain silent was scrupulously honored: (1) whether the suspect was advised prior to initial interrogation that he was under no obligation to answer

5

question; (2) whether the suspect was advised of his right to remain silent prior to the reinterrogation; (3) the length of time between the two interrogations; (4) whether the second interrogation was restricted to a crime that had not been the subject of earlier interrogation; and (5) whether the suspect's first invocation of rights was honored. *Mosley*, 423 U.S. at 104-105, 96 S.Ct. at 327. Alvarado was advised of his rights before each of the interrogations; factors one and two weigh in favor of the government. The record does not afford us enough information to determine the length of time between the two interrogations for purposes of the third factor, except to say that they occurred the same day. This factor weighs neither for nor against Alvarado. In reference to factor four, both discussions included references to the drug crime that formed the basis of Alvarado's eventual conviction. Factor four weighs in favor of Alvarado.

Finally, the question of whether or not the Alvarado's first invocation of rights was honored was not resolved by the district court. Alvarado asks us to assume that once he invoked his right to remain silent, he never changed his mind and answered all subsequent questions only because of duress or coercion brought to bear by law enforcement agents. The record does not support this conclusion. Newell testified that Councilman told him that Alvarado was willing to talk to him. Councilman had custody of Alvarado during the ride from Harlingen to Brownsville, and so Alvarado had ample opportunity to tell Councilman that wished to talk to the DEA. The nature of his statements to Newell (that he

6

had been framed and that he wished to become a DEA informant) support the inference that Alvarado chose to talk to the DEA in an effort to improve his circumstances. The record contains no evidence concerning any discussions between Councilman and Alvarado that would either support or undermine Newell's testimony.

For a fact issue to be properly asserted as plain error on appeal, it must be one arising outside of the district court's power to resolve. *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir.), *cert. denied*, 111 S.Ct. 2032 (1991). Whether Alvarado told Councilman that he was willing to talk with a DEA agent is a factual issue that could and should have been determined by the district court during the hearing on the motion to suppress. Alvarado failed to develop the factual basis, make the argument, or secure a ruling by the district court on his contention that the invocation of his right to remain silent was not scrupulously honored. Therefore, there is no basis for us to make that determination. This final *Mosley* factor, standing alone, is enough to abrogate Alvarado's position in this case.

We conclude that Alvarado has not established that the district court erred in failing to suppress the statements because his right to remain silent was not scrupulously honored. Therefore, we need not address the remaining plain error factors.

CONCLUSION

For the foregoing reasons, we AFFIRM Alvarado's convictions.

7