IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30919
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AL DAC HO, also known as Ai Dac Ho,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Louisiana
_____

August 27, 1996

Before POLITZ, Chief Judge, and JOLLY and BARKSDALE, Circuit
Judges.

E. GRADY JOLLY, Circuit Judge:

The sole issue addressed in this Fourth Amendment warrantless

search and seizure case is whether the police officer had probable

cause to arrest Al Dac Ho before Ho revoked his voluntary consent

to search his portfolio.  Based on the explicit testimony from the

suppression hearing, we conclude that, at the time Ho withdrew his

consent, the officer did not have probable cause to arrest Ho, and

thus lawfully could not continue the warrantless search of Ho's

portfolio as a search incident to arrest.  The evidence obtained

after Ho revoked his consent was the fruit of an unconstitutional

search, and we therefore reverse the district court's ruling on Ho's motion to suppress, vacate Ho's plea of guilty, and remand for further proceedings not inconsistent with this opinion.

I

On the morning of February 20, 1995, Lieutenant Gerard Simone and another officer, members of the New Orleans International Airport Narcotics Interdiction Unit of the Jefferson Parish Sheriff's Office, were conducting a surveillance of a flight from Los Angeles.[1] The officers alerted to the defendant, Al Dac Ho, a passenger on the flight, because he walked briskly down the concourse, had no carry-on luggage, and made no attempt to claim any checked luggage. The officers approached Ho, identified themselves, and asked Ho to produce his ticket. Ho produced a one-way ticket purchased with cash. Ho consented to a search of his person, including a small leather portfolio he was carrying. Ho told the officers that he would be in New Orleans for approximately two weeks and that his sister was bringing his luggage on a later flight.

The next day, a concerned citizen advised Officer Simone that Ho had purchased a cash one-way airline ticket to Los Angeles

---

[1]The officers of the Narcotics Interdiction Unit routinely conduct surveillances of incoming flights from Los Angeles because of Los Angeles' status as a major distribution point for narcotics.

departing that morning at 8:15 a.m. Officer Simone, accompanied by two other officers, approached Ho as the flight was boarding. Ho gave his consent to a search of his person and his portfolio. During the search of the portfolio, Officer Simone focused on a blank, white plastic card the size and shape of a credit card. Ho immediately struggled to retrieve the portfolio when the officer found the card. Officer Simone testified that it was obvious that Ho did not want him to look further at the portfolio when Ho attempted to retrieve the portfolio. The officer was able, however, to retain the portfolio. Upon further investigation of the white plastic card, Officer Simone discovered that the card had a magnetic strip on the back. The officers then arrested Ho for possession of a counterfeit credit card. After they arrested Ho, the officers searched the rest of the portfolio and found another similar blank credit card, along with seventeen counterfeit travelers checks and several pieces of paper with what appeared to be credit card account numbers on them.

II

Ho was charged with one count of transporting a fraudulent credit card in interstate commerce and one count of knowingly possessing counterfeit securities. He filed a motion to suppress the fruits of what he asserted was an illegal search conducted by Officer Simone. Ho argued that the search was illegal because

-3-

Simone did not have a warrant and Ho did not initially consent to the search. The government filed an opposition to Ho's motion, and the district court conducted a suppression hearing at which both Officer Simone and Ho testified. At the conclusion of the hearing, counsel for Ho argued that even if Ho had consented to the search, he effectively withdrew that consent by attempting to retrieve the portfolio from Officer Simone before the officer had probable cause to continue the search without Ho's consent and without a warrant.[2]

The district court denied Ho's motion to suppress, stating summarily that it was compelled to deny the motion after weighing the credibility of the two witnesses. Ho then entered a plea of guilty to the indictment, conditioned upon his ability to appeal

---

[2]The dissent argues that we should apply the plain error standard to this claim because Ho presents it for the first time on appeal. We are at a complete loss to understand how the dissent can claim that the matter was not preserved in the district court. First, unlike the defendant in United States v. Alvarado-Saldivar, 62 F.3d 697, 699, Ho argued this claim "in open court" and the district court responded, "I understand that. I think it is in order for to you [sic] point that out to me. I take it in to consideration as well." Tr., at 47 (emphasis added). Second, unlike the defendant in United States v. Maldanado, 42 F.3d 906, 910-11 (5th Cir. 1995), the record reveals that Ho established the factual basis for the issue in his examination of Officer Simone. See infra. Third, the state failed to raise the dissent's plain error argument in its brief to this court; it addressed the claim on the merits. Although the dissent is correct in pointing out that "this does not preclude our exploring this issue sua sponte," we find the state's "failure" to raise it strongly suggests that the state itself considered the claim properly to be preserved for appeal and that the state felt neither "ambushed" nor "sandbagged" on appeal. In our view, therefore, it is totally inapt to review this claim for plain error.

the district court's denial of his motion to suppress.  The court sentenced Ho to ten months' imprisonment to be followed by three years of supervised release.  Ho timely filed his notice of appeal.

III

We begin our consideration of this appeal from the premise that "warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." United States v. Cardenas, 9 F.3d 1139, 1147 (5th Cir. 1993), cert. denied, 114 S.Ct. 2150 (1994).  One such exception to the warrant requirement exists for searches incident to a lawful arrest. United States v. Barlow, 17 F.3d 85, 89 (5th Cir.), cert. denied, 115 S.Ct. 148 (1994).  A warrantless arrest must be based on probable cause.  United States v. Wadley, 59 F.3d 510, 512 (5th Cir. 1995).

Although the challenged search in this case occurred immediately prior to Ho's arrest, this does not prevent the search from being considered incident to a lawful arrest, Rawlings v. Kentucky, 100 S.Ct. 2556, 2564 (1980); United States v. Hernandez, 825 F.2d 846, 852 (5th Cir. 1987), cert. denied, 108 S.Ct. 1032 (1988), as long the fruits of the search incident to the arrest are unnecessary to support probable cause for the arrest.  100 S.Ct. at 2564 & n.6.  "If the arresting officers lacked probable cause and the arrest is invalid, evidence discovered as a result of the

arrest is subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest." 59 F.3d at 512. Officer Simone's continued search of Ho's portfolio after the revocation of consent was therefore constitutional only if the officer had probable cause to arrest Ho.[3] The sole issue for us to address is thus whether Officer Simone had probable cause to arrest Ho at the time that Ho revoked his consent.[4]

A

---

[3]The government relies on the Seventh Circuit's decision in United States v. Jachimko, 19 F.3d 296, 299 (7th Cir. 1994), to argue that because the officer had already "discovered" the card before Ho revoked his consent, the subsequent warrantless seizure of the card from the portfolio was valid. The court in Jachimko stated, "Where a suspect does not withdraw his valid consent to a search for illegal substances before they are discovered, the consent remains valid and the substances are admissible as evidence." Id. (citation omitted). We have yet to address the Seventh Circuit's "discovery" rule, cf. Mason v. Pulliam, 557 F.2d 426, 429 (5th Cir. 1977) (holding that revocation of consent does not require government to return copies of business records taken before revocation), and we find it unnecessary to do so today. First, Jachimko is distinguishable from the present case because the illegal nature of the substance in that case, marijuana plants, was readily apparent on first sight. The illegal nature of the plastic card was not immediately obvious here. Second, the government acknowledges that Officer Simone must have established probable cause of criminal activity at the time of the revocation of consent in order to have seized the card. Third, we conclude that, on the facts of this case, probable cause to justify seizure of the card mirrors probable cause to arrest Ho.

[4]Based upon the facts adduced during the suppression hearing, the district court's finding that Ho voluntarily consented to the search is not clearly erroneous.

"Probable cause is determined by an objective test:  it cannot be established simply by showing that the police subjectively believed that probable cause existed . . . ."  United States v. Cooper, 949 F.2d 737, 744 (5th Cir. 1991), cert. denied, 112 S.Ct. 2945 (1992).

> Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. Although probable cause requires more than a bare suspicion of wrongdoing, it requires `substantially less evidence than that sufficient to support a conviction.'

Wadley, 59 F.3d at 512 (quoting United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir.)(internal citation omitted), cert. denied, 110 S.Ct. 1957 (1990)).  The facts and circumstances "must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." 894 F.2d at 1438 (citation omitted).  The existence of probable cause is a mixed question of fact and law.  59 F.3d at 512.  We review the factual findings supporting the district court's probable cause determination for clear error.  Id.  The ultimate determination of probable cause, however, is a question of law subject to de novo review.  Id.

A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional.  United States v. Roch, 5 F.3d 894, 897 (5th

Cir. 1993) (citing <u>United States v. De La Fuente</u>, 548 F.2d 528, 533 (5th Cir.), <u>cert. denied</u> <u>sub nom.</u>, <u>Stewart v. United States</u>, 97 S.Ct. 2640 (1977)).  In a case such as this one, however, in which the officer acted without a warrant, the government bears the ultimate burden of proving that the officer had probable cause. <u>Id.</u>

B

The district court's order refers to credibility choices in denying the motion to suppress.  Although credibility choices were crucial to the issue of initial consent, a review of the record reveals no material dispute as to the facts necessary to resolve the legal question of probable cause that is before us today. Officer Simone testified that Ho had revoked his consent[5] when the officer first located the white plastic card in the portfolio.[6]  He also testified that he did not find the magnetic strip on the back

_____

[5]A consent which waives Fourth Amendment rights may be limited, qualified, or withdrawn.  <u>Mason</u>, 557 F.2d at 428-29.

[6]Officer Simone testified:
Q.  Was it obvious to you at the point when you had opened the portfolio and he attempted to grab it, that at that point he did not want you to look at it any further?
A.  Yes, it was.  I had already discovered the card.
Q.  He consented, it was clear to you he was not consenting at that point to anything further?
A.  That's correct.
Tr., at 20.

of the card until after Ho had revoked his consent.[7]  As the facts are undisputed, the only issue before us is the district court's ultimate legal determination that Officer Simone had probable cause to arrest Ho based on his discovery of a white piece of plastic the size and shape of a credit card in Ho's portfolio.

In reviewing the record, the question, of course, is not whether Officer Simone subjectively believed--as he stated on redirect examination[8]--that he had probable cause before Ho revoked consent.  <u>Cooper</u>, 949 F.2d at 744.  Instead, the question is

---

[7]Officer Simone testified:
Q.   Officer, isn't it true that you examined the card and noticed the magnetic strip on the card after he attempted to pull it away and after you regained control of it?
A.   When I first found the card is when he tried to pull it away, after I regained control of the folder is when I looked at it and found the magnetic strip on the rear of it.
Q.   So, before he tried to pull it away, all you saw, the front of the card?
A.   It was a totally blank white card.
* * *
Q.   Before you tried to controlled [sic] it, all you saw was a blank credit card?
A.   That's correct.
Q.   A blank piece of plastic?
A.   Size and shape of a credit card; correct.
Tr., at 20-21.

[8]Officer Simone testified:
Q.   Whenever Mr. Ho pulled the portfolio back from the position when you examined and you already discovered the white piece of plastic, did you have probable cause in your mind to seize the credit card?
A.   Yes, I did.
Tr., at 23.

whether "the totality of facts and circumstances within [his] knowledge at the moment of [revocation we]re sufficient for a reasonable person to conclude that [Ho] had committed or was committing an offense." Wadley, 59 F.3d at 512. We can agree that the record supports a legal conclusion that a reasonable person with Officer Simone's knowledge and experience would have had some suspicion--as distinguished from probable cause to believe--that the white piece of plastic was fraudulent before Ho's revocation of consent.

A review of Officer Simone's testimony as a whole reveals in the clearest tones the importance of the magnetic strip to his determination that the card was fraudulent. On direct examination by the government, Officer Simone testified:

> Q. When you noticed the small white plastic card you found, did you know what that was, from your experience as a police officer?
>
> A. In the past I encountered those cards and cards like that one, which were blank, had the magnetic strips on the rear of them. And they were later determined to be fraudulent credit cards.

Tr., at 11 (emphasis added). Crucially, this testimony reveals the specific factors, based on Officer Simone's experience, which would warrant a conclusion that the card was fraudulent. On cross-examination, he testified:

> Q. Isn't it true, an examination of the card, after the brief struggle where you saw the magnetic strip, indicated to you that this was contraband?

A.   That's correct.

Q.   All that occurred after he made it clear he was not consenting to this search?

A.   When I first located the card, it was obvious it was some type of contraband or something, that is when I controlled the folder.

* * *

Q.   It was the examination of the metal strip after that was the indication that this was --

A.   Well, in the past I had encountered cards the same size and shape that were, in fact, fraudulent, saw the card, I <u>suspected</u> it was a fraudulent credit card.

Tr., at 21-22 (emphasis added).  Although Officer Simone made an effort to backpedal after admitting that it was the discovery of the magnetic strip that led him to believe that the plastic card was fraudulent, he still could say nothing more specific than that "it was obvious it was some type of contraband or something" and that he "suspected" it was fraudulent.   Furthermore, Officer Simone testified that his arrest report indicated that he knew the card was fraudulent only after discovering the magnetic strip:[9]

Q.   In your report, isn't it true when you detailed the events of the day, you say after gaining control of the folder you examined the card, you noticed the magnetic strip on the rear and this indicated to you this card was of a fraudulent nature?

A.   That's correct.

---

[9]The police report is not a part of the record.

-11-

Tr., at 21-22.  He did not deny, back away from or attempt to explain this critical admission.  Thus, taken as a whole, Officer Simone's testimony dictates the legal conclusion that the discovery of the magnetic strip after Ho revoked his consent was an essential element of the probable cause determination for an officer with Officer Simone's knowledge and experience.

Other factors also buttress the conclusion that a reasonable person with Officer Simone's knowledge and experience would not have had probable cause to believe that criminal activity was afoot when Ho revoked his consent.  First, the government, on whom the burden was placed to justify this warrantless search, Roch, 5 F.3d at 897, presented no explanation why a white plastic card the size and shape of a credit card in a portfolio, standing alone, is sufficient to give a reasonable person probable cause to believe that it is a fraudulent credit card.  The absence of evidence on this point is especially striking in the light of the ubiquity of plastic "swipe" cards in our modern society--for locks on hotel room doors, office buildings, gates and garages, telephones and check cashing--which often are plain on one side.  Second, the government elicited almost no testimony from which to gauge the extent of Officer Simone's knowledge and experience in the area of credit card fraud.  In fact, the government presented no information about his career other than his service in the

Narcotics Interdiction Unit at the time of the arrest. Third, as a member of the Narcotics Unit, Officer Simone was on the lookout for drugs and not counterfeit credit cards.[10]  In the same vein, it is also clear, based on Ho's encounter with Officer Simone the previous day, that Officer Simone suspected Ho of drug trafficking, not credit card fraud; in other words, there was no predicate background in the investigation to support the criminal character of the card.  Fourth, Officer Simone did not arrest Ho until after he regained control of the portfolio and actually discovered the magnetic strip on the back of the card.

IV

We emphasize that probable cause is more than a "bare suspicion" of wrongdoing.  Viewing the record as a whole, we are convinced that the government did not satisfy its burden of proving that a reasonable person with Officer Simone's knowledge and experience would have had probable cause to arrest Ho when Ho revoked consent based on the totality of facts and circumstances within Officer Simone's knowledge at that time.  The arrest being unlawful, it follows that all evidence obtained pursuant to the search incident to that arrest, including the search immediately

---

[10]We think this distinction is important because the piece of plastic would have had much less immediate criminal significance to a reasonable person with the knowledge and experience of an officer whose day-to-day activities focused on investigating illegal drug trafficking.

prior to the arrest, is inadmissible as the fruit of an unlawful search.[11]  Wadley, 59 F.3d at 512.  We therefore REVERSE the district court's ruling on the motion to suppress, VACATE Ho's plea of guilty, and REMAND for further proceedings not inconsistent with this opinion.

REVERSED, VACATED and REMANDED.

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting:

_____

[11]In the alternative, the government argues for the first time on appeal that exigent circumstances justified the continued search of Ho's portfolio after Ho revoked his consent because Ho was about to leave on the flight to Los Angeles.  The government relies primarily on the Second Circuit's decision in United States v. Smith, 643 F.2d 942 (2d Cir.), cert. denied, 102 S.Ct. 350 (1981). The court in Smith held that exigent circumstances justified the warrantless search of an airplane passenger's bag because "Smith was about to leave with the evidence in hand on the flight."  643 F.2d at 945.  Unlike this case, however, the search in Smith was supported by probable cause.  Id.  Because the government did not have probable cause before Ho revoked his consent, exigent circumstances did not justify the subsequent warrantless search of Ho.

My dissent rests on three bases: the consent revocation pre-probable cause issue the majority finds dispositive was not preserved in district court; Officer Simone had probable cause to arrest Ho before consent revocation; and, at the very least, the white plastic card seen, and possibly seized, by the Officer before revocation is admissible.  At a minimum, this case should be remanded for further fact finding on the suppression questions.

I.

The majority starts in the right direction by agreeing with the district court that Ho consented to the search of his portfolio.  And, it concludes that he did not revoke that consent until after Officer Simone had seen, in its words, the front of "a blank, white plastic card the size and shape of a credit card."  These crucial rulings are determinative of the newly raised issue embraced by the majority.  Unfortunately, it takes a wrong turn.

II.

This appeal presents yet another instance of a sizeable expenditure of all too scarce judicial resources because a suppression issue is being raised for the first time on appeal. This new issue should have been resolved initially in district court, where evidence is presented and tested, instead of here,

where the majority has to base its holding, in part, on its own experience with the use of plastic cards.  As oft stated, this is no way to run a railroad; nor is it any way to run our judicial system.  In short, the newly raised issue should be reviewed only for plain error.

In the alternative, probable cause existed to arrest Ho at the instant of consent revocation, thereby permitting the seizure of the challenged evidence.  In the further alternative, because the blank plastic card had been seen, and possibly seized, before revocation, it is admissible.

A.

The majority states that "[t]he sole issue addressed in this Fourth Amendment warrantless search and seizure case is whether the police officer had probable cause to arrest Al Dac Ho before Ho revoked his voluntary consent to search his portfolio" (revocation pre-probable cause).  But, this is an alternative claim, presented for the first time on appeal.

First, Ho asserts, as in district court, that he did not consent at any point.  The majority easily rejects this claim.  Ho's alternative position -- revocation pre-probable cause -- was not preserved in district court.  Accordingly, we should review only for plain error.  There is none.

1.

-16-

As detailed by the majority,

> [a] defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional.  In a case such as this one, however, in which the officer acted without a warrant, the government bears the ultimate burden of proving that the officer had probable cause.

(Citations omitted.)  But, obviously, the Government's burden is framed by the suppression issue(s) presented by the defendant to the district court.  *See* ***United States v. Alvarado-Saldivar***, 62 F.3d 697, 699-700 (5th Cir. 1995) (reviewing for plain error factual issue raised for first time on appeal from denial of suppression motion, and noting that where defendant failed to develop factual basis, make argument, or secure ruling by district court on that issue, there is no basis for appellate court to do so), *cert. denied*, ___ U.S. ___, 116 S. Ct. 742 (1996); ***United States v. Maldonado***, 42 F.3d 906, 909-12 (5th Cir. 1995) (reviewing for plain error issue raised for first time on appeal from denial of suppression motion and noting that district court did not address issue because it was not presented); ***United States v. Basey***, 816 F.2d 980, 993 (5th Cir. 1987) (refusing to consider merits of ground for suppression raised at trial but not in pretrial motion to suppress).

Simply put, in contesting a suppression motion, the Government is not required to advance and disprove every possible basis on which the defendant *might* demonstrate an unreasonable search or seizure. *See* **Maldonado**, 62 F.3d at 912 (if defendant had presented in district court issue raised for first time on appeal, testimony could have been taken, argument could have been received, and district court could have ruled on issue); *see also* **United States v. Neumann**, 887 F.2d 880, 886 (8th Cir. 1989) (en banc) (declining to review ground for suppression urged on appeal that was neither presented to, nor ruled upon by, district court, and stating that "[i]f [defendant] had raised this ground by way of pretrial motion, the district court could have determined the reasonableness of the search and seizure ... [and] the government could have ... attempted to justify the seizure" under an exception to the warrant requirement), *cert. denied*, 495 U.S. 949 (1990).

This is one of several obvious reasons why a motion to suppress evidence "must be raised prior to trial". FED. R. CRIM. P. 12(b)(3). Failure to do so "constitute[s] waiver". FED. R. CRIM. P. 12(f). *See* **United States v. Harrelson**, 705 F.2d 733, 738 (5th Cir. 1983) ("[f]ailure to move pre-trial for suppression, or to assert a particular ground in the suppression motion, operates as a waiver unless the district court grants

-18-

relief for good cause shown"); ***United States v. Knezek***, 964 F.2d
394, 397 (5th Cir. 1992) ("[a] district court does not abuse its
discretion under Rule 12(f) in denying a suppression motion
solely on the ground that the defendant failed to comply with
pretrial procedures"); ***United States v. Schwartz***, 535 F.2d 160,
163 (2d Cir. 1976) ("failure to assert a particular ground in a
pre-trial suppression motion operates as a waiver of the right to
challenge the subsequent admission of evidence on that ground"),
*cert. denied*, 430 U.S. 906 (1977).

Along this line, the district court's local rules in effect
when the motion was filed required that "[a]ll motions except
those made during a hearing or trial which is being properly
recorded into the court record shall be made in writing."  UNIF.
LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE EASTERN, MIDDLE, AND
WESTERN DISTRICTS OF LOUISIANA 2.04E (1995).  Those rules required
further that motions be accompanied by a memorandum containing
"(1) a concise statement of reasons in support of the motion, and
(2) citations of the authorities on which [the movant] relies or
copies of these authorities."  UNIF. LOCAL RULES OF THE UNITED STATES
DISTRICT COURTS FOR THE EASTERN, MIDDLE, AND WESTERN DISTRICTS OF LOUISIANA
2.05 (1995).

Likewise, we do not require, nor can we expect, district
judges to be mindreaders, or to conjure issues that might, or

should, have been raised.  *See **United States v. Rodriguez***, 15 F.3d 408, 417 (5th Cir. 1994) (internal quotation marks and citation omitted) ("one of the obvious, and most salutary, purposes of the plain error rule is to enforce the requirement that parties object to errors at trial in a timely manner so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal");  *see also **McCoy v. Massachusetts Institute of Technology***, 950 F.2d 13, 22 (1st Cir. 1991) ("Overburdened trial judges cannot be expected to be mind readers.  If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review."), *cert. denied*, 504 U.S. 910 (1992); ***Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.***, 840 F.2d 985, 990 (1st Cir. 1988) (party has duty "to spell out its arguments squarely and distinctly ... [rather than being] allowed to defeat the system by seeding the record with mysterious references ... hoping to set the stage for an ambush should the ensuing ruling fail to suit"); ***Beaudett v. City of Hampton***, 775 F.2d 1274, 1278 (4th Cir. 1985) (appellate courts should not permit "fleeting references to preserve questions on appeal"), *cert. denied*, 475 U.S. 1088 (1986).

It is against this backdrop that this record must be reviewed carefully to determine whether the revocation pre-probable cause issue was properly preserved in district court. The majority obviously concludes that it was; it states that,

> [a]t the conclusion of the [suppression] hearing, counsel for Ho argued that even if Ho had consented to the search, he effectively withdrew that consent by attempting to retrieve the portfolio from Officer Simone before the officer had probable cause to continue the search without Ho's consent and without a warrant.

While this may have been what Ho's counsel was thinking, or intended to say, or was moving toward saying, this is *not* what he said, as hereinafter shown in numbing, but nonetheless necessary, detail.

Ho's motion and supporting memorandum never mention the revocation pre-probable cause issue. Instead, those district court papers assert that "one of the officers took the small portfolio from Mr. Ho", and that the Officer then

> opened the portfolio without permission and rifled through its contents. Once in the office, the officer thoroughly searched everything in the portfolio. Never was permission to search asked for, nor given.

Those papers then stated: (1) that, "[w]ithout a warrant to search Mr. Ho's portfolio and in the absence of probable cause and exigent circumstances, the validity of the search depends on

Mr. Ho's purported consent"; (2) that "[i]t is the government's burden to prove consent; numerous Supreme Court cases have held that to show that consent was voluntary it is insufficient for the prosecution to prove a mere submission to a claim of lawful authority"; and (3) that, because he was detained by the officers and not free to leave, Ho "could not and did not consent to a search of his portfolio; at best he merely acquiesced in the face of a show of authority. At worst, the portfolio was simply taken from him."

The Government's response stated that, on the day of the arrest, Ho was at the departure gate; and that,

> [n]oting that the plane was due to leave at any moment, Lt. Simone requested consent to search HO once again. HO freely gave his consent. As Officer Simone was searching the small leather folder he had observed in HO's possession on the previous day, he found a blank white plastic card with a magnetic strip on one side. *Immediately after Officer Simone located the blank white plastic credit card, HO grabbed the leather folder out of Simone's hands.* From his experience, Simone knew the white plastic card to be a counterfeit credit card.

(Emphasis added.) In short, prior to the suppression hearing, it was the Government that presented the subject of consent revocation.

In its response, the Government addressed the factors for determining whether the consent was given voluntarily, and urged

-22-

that, "[o]nce contraband was found in Ho's possession, the officers had probable cause to arrest" Ho, and that the search incident to the arrest, in which the additional contraband was found, was proper.

Ho did not file a reply to the Government's response. Therefore, proceeding into the hearing, the only basis he had raised for challenging the search and seizure was that he had not consented at any point. As noted, the Government's response surfaced the fact that Ho revoked his consent during the search, but the more narrow issue -- that of revocation pre-probable cause -- was not before the district court at the start of the hearing.

Prior to the start of testimony at the hearing, Ho did not alert the district court to this issue, either in writing or orally. Officer Simone, then Ho, testified. As developed by the majority, the Officer stated on cross-examination that he found a magnetic strip on the back of the card after Ho tried to regain the portfolio. The Officer then testified that, "[w]hen [he] first located the card, it was obvious it was some type of contraband or something, that is when I controlled the folder", and admitted that, before then, "[all] he saw was a blank credit card". He denied that it was only upon seeing the magnetic strip

that he thought the card was fraudulent.  On redirect, the following colloquy ensued:

> Q    [Ho's counsel] asked you questions about when Mr. Ho pulled his portfolio back from you.  When you were going through the portfolio and discovered the white piece of plastic, did you know at this time before he pulled it back that that was a fraudulent credit card?
>
> A    When I removed it from the folder, I suspected that it was.
>
> Q    Whenever Mr. Ho pulled the portfolio back from the position when you examined and you already discovered the white piece of plastic, did you have probable cause in your mind to seize the credit card?
>
> A    Yes, I did.

Ho testified on direct examination that, when he was about to board his return flight to Los Angeles,

> Officer Simone came up to me[,] grabbed me from behind and just grabbed my folder.  I said, give that back to me.  He said come with me and I said, my flight is leaving right now.  He said, Come with me or -- this is exactly -- or I'll fuck you up right here.

Ho denied that he gave consent in any shape, form or fashion.

Following Ho's testimony, the court questioned Officer Simone:

> Q    ... Describe to me the paraphernalia
>      that you identified as being stuff that

                    would be used for fixing up a credit
                    card?

          A         The best way I can describe it, show you
                    a credit card and the piece of plastic
                    is the same exact size and shape as a
                    credit card and with no writing or
                    nothing of that nature on it.  On the
                    rear of it it has a magnetic strip, just
                    like a credit card would.

          Q         How many of those did you see in his
                    portfolio?

          A         He had just one card, just one blank
                    one, totally blank.  In other words, if
                    I recall correctly, it was all filled
                    out like a regular card with no
                    indication it was fraudulent until the
                    second officer identified it as a
                    fraudulent card.

          Q         Now, without going into any other detail
                    because I don't guess it really is
                    pertinent, was there anything else in
                    that portfolio as you described it, that
                    caused your curiosity to arise or signal
                    to you in some way this was something
                    that could be perceived to be an
                    impropriety of some kind?

          A         Not immediately.  It was just the one
                    blank card.

     Among other things, the court questioned the Officer about

other officers (two) assisting him that day, including their

participation and proximity to Ho.  The Officer testified that

the two officers would have heard his conversation with Ho.

     Argument was then presented.  The Government stated that a

credibility call was at hand -- it advanced consent and search

incident to arrest, Ho advanced "abusive police officers beating up on an innocent man." The Government noted also that, when the Officer searched the portfolio, he "look[ed] at the white credit card, only [saw] the front. He recognizes it as a counterfeit credit card. Ho knows he has been had, tries to pull it back." It reminded the court that "[t]he officer did testify at the point he saw just the plain white credit card, from his experience, he knew it was a counterfeit credit card and had probable cause to arrest [Ho] at that time." It did not mention the interplay of the later observed magnetic strip.

Ho's counsel argued that, even accepting the Officer's version as true, the Government lost, because the Officer did not have probable cause to arrest. As Ho's lawyer was apparently beginning to address the issue of consent, the court interjected that this was why he had questioned Officer Simone, and that he was "interested in events of the second day [day of arrest] as they have to do with either a verbal confrontation or physical confrontation. And that is what is sort of on my mind here. That and only that."

Ho's attorney responded that he did not concede consent, but the court interjected that it found Ho's version "implausible". It stated that it was "concerned about the actual event of the taking over of the portfolio", and that it was concerned that the

other two officers at the scene had not testified in support of

Officer Simone's version.

As the hearing was ending, the following key colloquy

ensued:

> THE COURT: I find [Officer Simone's version]
> to be quite credible.  The only problem I
> have with it is the actual momentary hopping
> of what took place the second day.  Putting
> into my own consideration of it, what
> obviously was pretty exceptional procedure of
> the officer not to be at least somewhat
> concerned about the fact that here is this
> guy again.  I can see how he may have been a
> little fire in his eye as far as what is
> going on the second day now.  And the thing
> that is concerning me is, I don't find Mr.
> Ho's story plausible.  I also am concerned
> about the actual event of the taking over of
> the portfolio.  It's just something I have
> got to think about.  And I will.  It's sort
> of after the fact, but if -- and certainly is
> clear to both counsel on both sides -- that I
> guess if not concerned, at least giving some
> thought to the fact that the other two
> officers who could have supported the events
> of the second day as they had to do with the
> turning over or not of the portfolio on the
> voluntary basis are not here.  But I'm going
> to take that as I find it.  I've got to say
> that is going to play some part in my
> deliberations about the matter.
>
> [Ho's counsel]: I understand your concern.
> If I may, *one final point.  While we
> absolutely don't concede the initial consent,
> giving the portfolio, according to Officer
> Simone, once he opened the portfolio, at this
> point he saw a plain piece of plastic.  It
> was at that point when Mr. Ho tried to grab
> the portfolio back.  It is accepted doctrine*

> *of withdrawal of consent. That was an*
> *unequivocal act.*
>
> THE COURT: *I understand that. I think it is*
> *in order for to you [to] point that out to*
> *me. I take it in to consideration as well.*

(Emphasis added.)

Of critical importance to whether the revocation pre-probable cause issue was preserved is the fact that, although at the end of the hearing, Ho's counsel mentioned "withdrawal of consent", which the district court noted was "point[ed] ... out", Ho's counsel did not identify, much less discuss, the point found dispositive by the majority -- that when consent was withdrawn, the Officer did not have probable cause to arrest, much less that probable cause was lacking because the Officer had not then seen the magnetic strip. True, as noted *supra*, the Government in its argument had urged probable cause at the time of revocation; but, again, the magnetic strip factor had not been mentioned. Contrary to the majority's view, presented in its note 2, the emphasized portions of the above quotation do not reflect that the narrow issue found dispositive by the majority was either presented to, or acknowledged by, the district court.

Surely, it was not incumbent upon the Government to present that newly surfaced point, a point so lost among the competing and shifting versions about consent that Ho's counsel didn't

mention it.  Nor does the record contain any post-hearing follow-up by Ho's counsel, such as a supplement to the motion, advancing the issue he presses here for the first time -- revocation pre-probable cause because the magnetic strip had not been seen.

That the issue at hand was not presented adequately to the district court is amply demonstrated by its one-paragraph order denying the suppression motion.  It stated in pertinent part:

> The government presented the testimony of one of three officers present at the time of the alleged illegal search.  This officer testified that the defendant consented to the search of the portfolio where the contraband was found. [Ho] testified that the officer grabbed the portfolio from him and rifled through it without his consent.  No other witnesses testified.  Neither of the other officers present at the search was called to testify as to the circumstances of the search, which perhaps calls into question the management of this case by the government. Nevertheless, considering the substance of the testimony offered and the credibility of the witnesses, this court is compelled to deny the motion.

In sum, the order addresses only Ho's contention that he never consented to a search.  The court did not address the far more narrow revocation pre-probable cause issue.  And, subsequent to the order, Ho's counsel did not move the court to reconsider on the basis of this more narrow issue. He did not raise this issue until it was presented for the first time on appeal as an alternative position.

On appeal, the Government acknowledges that it had the burden to prove voluntary consent and urges that Ho so consented to the portfolio search.  It agrees that, upon giving consent, Ho was free to withdraw it, but maintains that Ho could not retroactively do so once the contraband was found.  It then urges that, when Ho did attempt to regain the portfolio, the Officer had seen the card and probable cause to arrest Ho existed.

The Government does not contend, however, that the revocation pre-probable cause issue was not raised in district court.  But, this does not preclude our exploring this *sua sponte*.  *See **Maldonado***, 42 F.3d at 912 & n.9 (reviewing issue raised for first time on appeal from denial of motion to suppress for plain error even though Government did not contend that issue was not raised in district court); ***United States v. Pierre***, 958 F.2d 1304, 1311 n.1 (5th Cir.) (en banc) ("The government's failure to argue the correct standard of review on appeal does not ... prevent us from measuring the argument against the appropriate standard of review"), *cert. denied*, 506 U.S. 898 (1992); ***United States v. Vontsteen***, 950 F.2d 1086, 1091 (5th Cir.) (en banc) ("no party has the power to *control* our standard of review"; if neither party suggests the appropriate standard, the reviewing court must determine the proper standard on its own), *cert. denied*, 505 U.S. 1223 (1992).

As has been stated repeatedly, we require issues to be developed in district court and not be presented for the first time on appeal.  Issues must be framed adequately and developed factually, with supporting analysis of the concomitant points of law, for the trier of fact, the entity making the all-important credibility choices, which choices invariably arise on motions to suppress, so that the legal precedent can be presented and supplemented if necessary; so that, for reasons of fundamental fairness, one side is not ambushed or sandbagged; and so that judicial efficiency and economy are not sacrificed by requiring issues to be sent back to district court to be developed more fully.  *See, e.g., **United States v. Calverley***, 37 F.3d 160, 162 (5th Cir. 1994) (en banc) (internal quotation marks and footnote omitted) (the rule that failure to assert a right in the trial court likely will result in its forfeiture "is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact"), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1266 (1995); **United States v. Rodriguez**, 15 F.3d at 417 (internal quotation marks and citation omitted) ("one of the obvious, and most salutary, purposes of the plain error rule is to enforce the requirement that parties object to errors at trial in a timely

manner so as to provide the trial judge an opportunity to avoid
or correct any error, and thus avoid the costs of reversal").

2.

The district court's finding that the Government met its
burden of proving voluntary consent is reviewed only for clear
error. *E.g., United States v. Gonzales*, 79 F.3d 413, 419 (5th
Cir. 1996). And, had the probable cause issue been properly
preserved in district court, that issue would be reviewed *de
novo*. *Ornelas v. United States*, ___ U.S. ___, 116 S. Ct. 1657,
1659 (1996).

But, when, as here, an issue is raised for the first time on
appeal, we review only for plain error. FED. R. CRIM. P. 52(b);
*United States v. Calverley*, 37 F.3d at 162-64. In doing so, we
analyze four increasingly familiar factors. *United States v.
Olano*, 507 U.S. 725, 732 (1993); *Calverley*.

First, there must be an "error"; "[d]eviation from a legal
rule is 'error' unless the rule has been waived." *Olano*, 507
U.S. at 732-33. Second, the error must be "plain"; "'[p]lain'
[is] synonymous with 'clear' or, equivalently, 'obvious.'" *Id*.
at 734. Third, the error must "affec[t] substantial rights", *id*.
(internal quotation marks omitted); "[n]ormally, although perhaps
not in every case, the defendant must make a specific showing of

-33-

prejudice to satisfy the 'affecting substantial rights' prong of Rule 52(b)", *id*. at 735. The fourth, and final, factor concerns an appellate court's discretion; "[i]f the forfeited error is 'plain' and 'affect[s] substantial rights,' the Court of Appeals has authority to order correction, but is not required to do so." *Id*. A plain forfeited error affecting substantial rights should be corrected if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id*. at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

As concerns Ho, even assuming "error" that "affected substantial rights", the error was certainly not "plain" -- it was not "clear" or "obvious". The issue turns on very detailed, quickly developed, temporal facts, and as our court has stated in the past, "[f]or a fact issue to be properly asserted as plain error on appeal, it must be one arising outside of the district court's power to resolve." *United States v. Alvarado-Saldivar*, 62 F.3d at 700; *see also* *Robertson v. Plano City of Texas*, 70 F.3d 21, 23 (5th Cir. 1995) ("because the nature of the claimed error is a question of fact, the possibility that such a finding could rise to the level of obvious error required to meet part of the standard for plain error is remote").

As noted, even if these first three factors are satisfied, we still have discretion not to reverse.  The district court's ruling certainly does not rise to the level of those that should be corrected, those that go to the heart of what judicial proceedings seek to ensure, accomplish, preserve and protect -- substantial and fundamental fairness.

To the contrary, in this instance, it is our judicial system that has been abused.  This narrow question of fact, which really should not change the result reached by the district court, should not be permitted to undo all that has been done in the proceedings to date.  Accordingly, because there is no plain error, the suppression ruling should be affirmed.

B.

Even assuming the revocation pre-probable cause issue is not being raised for the first time on appeal, there was probable cause for Ho's arrest at the time of revocation.

Faced with two conflicting versions of the incident, the district court made its mandated credibility choice and accepted Officer Simone's version that Ho "consented to the search of the portfolio where the contraband was found", rather than Ho's that "the officer grabbed the portfolio from him and rifled through it without his consent."  The majority concludes that this consent finding was not clearly erroneous.

After the Officer discovered the blank white credit card-shaped plastic card, Ho revoked consent by trying to regain his portfolio. The Officer retained control, looked at the back of the card, saw the magnetic strip, and arrested Ho.

The majority holds that the Officer lacked probable cause to arrest Ho when the Officer saw the card and Ho revoked consent. It holds also that Officer Simone's looking at the back of the card after Ho tried to regain the portfolio was an unlawful search because consent had been revoked and that, therefore, the evidence found during the subsequent search should have been suppressed.

The majority furnishes the standard for probable cause: whether "the totality of facts and circumstances within [Officer Simone's] knowledge at the moment of [revocation we]re sufficient for a reasonable person to conclude that [Ho] had committed or was committing an offense." *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). But, it misapplies this standard, which involves subjective and objective components. Before reaching the objective "reasonable person" component, the subjective component must be considered -- "the totality of facts and circumstances within Officer Simone's knowledge". Restated, whether the Officer had probable cause to arrest Ho upon seeing

the card and consent being revoked cannot be answered in isolation from the surrounding circumstances.

The officers, including Simone, had conducted surveillance the day before and had been alerted to Ho because he was walking at an unusually fast pace when he deboarded his flight from Los Angeles, even though it had arrived on schedule in New Orleans. As Officer Simone testified, Ho was walking "very, very, fast, extremely fast .... he looked like he was walking so fast he almost start[ed] to jog". More important, Ho carried only a small portfolio and had not checked any luggage; he had bought a one-way cash ticket; he claimed to be visiting friends for two weeks, but could or would not name them; and he claimed that his sister would be bringing his luggage on a later flight.

Officer Simone testified that, in response to Ho inquiring why the officers were questioning him, they stated that they were narcotics detectives and had noticed that he had arrived on a flight from Los Angeles and was preparing to depart the airport without any luggage. Ho granted their request to search his portfolio; they found nothing of note.

The next morning (day of arrest), Officer Simone was informed that Ho had purchased a one-way cash return ticket to Los Angeles. Ho was at the airport that morning, although he had said he would be in New Orleans for two weeks, and Officer Simone

stopped him outside the gate area as the flight was starting to board.  Upon the Officer asking Ho why he was returning to Los Angeles so soon, Ho explained that he had had a fight with his sister and had decided to cut his trip short.  Officer Simone testified that Ho's explanation "didn't seem reasonable to me that if he was visiting friends, why an argument with the sister would cancel his entire plans."

The district court found Ho's story leading up to the search to be implausible, and so, obviously, did Officer Simone. Surely, this implausibility must be considered in assessing probable cause. But, in evaluating the Officer's subjective knowledge, the majority fails to give adequate weight to these critical surrounding circumstances, instead focusing narrowly on the moment when he saw the card.

Even focusing on that moment, the majority underestimates the probable cause for arrest at that point.  It holds that seeing the blank white front of the plastic card would not alone establish probable cause; that it was established only after the Officer saw the magnetic strip on the back, post-revocation.

But, as the Officer testified, when he "first located the card, it was obvious that it was some type of contraband"; at that point, all he saw was a blank piece of plastic the size and shape of a credit card.  The Officer testified that, when he

noticed the card, he knew what it was from his experience as a police officer because, "[i]n the past [he had] encountered those cards and cards like that one, which were blank, had the magnetic strips on the rear of them.  And they were later determined to be fraudulent credit cards."

The fact that the card was blank indicated to the Officer that it was contraband; and, even though the magnetic strip supported his opinion, this does not diminish the existence of probable cause upon the Officer's seeing the card's blank front in those circumstances.  At that moment, he thought he had probable cause; and, the totality of the facts and circumstances in light of his subjective knowledge were more than sufficient for a reasonable person to reach the same conclusion.

The majority takes judicial notice of the ubiquity of plastic "swipe" cards in modern society; but, contrary to its concerns, I likewise take judicial notice that these cards are very, very seldom, if ever, blank on one side; they typically bear some type of marking.  (This intra-panel judicial notice/fact dispute is yet another splendid example of why issues must be timely presented to the fact finder, so that they can be hashed out and resolved after both sides have an opportunity to put on evidence, and so that appellate courts don't have to grasp at judicial notice straws, or in this instance, plastic cards.)

Whereas it would be most unusual for such a card to be completely blank, the fact that all the "swipe" cards mentioned by the majority would have a magnetic strip indicates that the "total blankness" of one side of a card of this type and shape arouses more suspicion than a magnetic strip on the other. Moreover, in light of the Officer's testimony that he found nothing of note in the portfolio when he searched it the previous day, it is obvious that the card was not then in the portfolio.

This fact, when considered with the other circumstances, including the Officer's past encounters with fraudulent credit cards, and Ho's implausible explanation of why he was leaving after only one day, after an almost 2,000-mile flight, when he initially told officers that he planned a two-week visit, supports a conclusion that the Officer had probable cause *before* seeing the magnetic strip. Accordingly, I must disagree with the majority that Officer Simone had probable cause only upon later seeing the strip.

The majority unfairly criticizes the Government for failing to elicit testimony from which to gauge the extent of Officer Simone's knowledge and experience in the area of credit card fraud. We have come full circle; we are back to why Ho was required to present the revocation pre-probable cause issue. Because Ho did not raise that issue in district court, the

Government had no reason to anticipate that such testimony would become critical when the issue was later raised for the first time on appeal. *See* **Maldonado**, 42 F.3d at 912 ("[T]he district court ruled on the issues presented it. Had the [revocation pre-probable cause] issue been presented, testimony could have been taken, and argument received, on that issue; and the district court would have dealt with it.")

Along that same line, the majority posits that, because Officer Simone was a member of the narcotics unit, whose day-to-day activities focused on investigating illegal drug trafficking, the plastic card would have had much less immediate criminal significance to him. Again, because Ho did not raise the issue in district court, the Government was not on notice that testimony about the Officer's experience with credit card fraud was necessary. Nevertheless, he testified on direct examination that, "[i]n the past I encountered those cards and cards like that one, which were blank, had the magnetic strips on the rear of them. And they were later determined to be fraudulent credit cards." And, on cross-examination, he testified that, "in the past I had encountered cards the same size and shape that were, in fact, fraudulent, saw the card, I suspected it was a fraudulent credit card." The majority states, again most unfairly, that the Officer was "mak[ing] an effort to backpedal"

in his testimony; but, the absence of further development of this subject is explained by Ho's failure to raise the issue.  The majority demands an impossible burden of proof from the Government by requiring it to anticipate and present evidence on an issue that was not raised in district court.

The circumstances of the encounter, in conjunction with Officer Simone's subjective knowledge of such blank cards being counterfeit credit cards, meet the objective test for a reasonable person to find probable cause for Ho's arrest.  *See* **Wadley**, 59 F.3d at 512.

C.

It is well to remember that the Fourth Amendment protects only against "unreasonable" search and seizure; obviously, Ho's consent lowered the protections offered by that Amendment.  *See, e.g.,* **Schneckloth v. Bustamonte**, 412 U.S. 218, 219 (1973) (consent is "one of the specifically established exceptions to the requirements of both a warrant and probable cause").  Toward that end, even assuming *arguendo* both that the revocation pre-probable cause issue was raised in district court, and that Officer Simone did not have probable cause to arrest Ho as of consent revocation, the white blank card seen by that time by the Officer is admissible in evidence nevertheless, even if the other items in the portfolio are not.  (Surely, even if the card is not

-42-

admissible, Officer Simone will at least be able to testify at trial about the front of the card he observed before consent revocation.)  The majority in its note 3 sidesteps whether at least the card is admissible, stating that it is unnecessary to reach this issue, even though it cites *Mason v. Pulliam*, 557 F.2d 426 (5th Cir. 1977), in discussing the case primarily relied upon for this point by the Government, *United States v. Jachimko*, 19 F.3d 296 (7th Cir. 1994).

We need not look beyond *Mason* to know that, because the Officer saw the card prior to consent revocation, the card is admissible.  Mason granted an IRS agent's request to remove and examine Mason's business records.  Several days after the agent obtained the records, he refused Mason's demand for their return.

Our court affirmed returning Mason's records and all copies made after the demand for return.  Noting that consent can be limited, qualified, or withdrawn, it rejected the agent's contention that, when Mason permitted him to take the papers for examining and copying, Mason waived forever his Fourth Amendment rights and any underlying reasonable expectations of privacy. *Id*. at 428.  Our court held, however, that Mason's withdrawal of consent and reinvocation of his Fourth Amendment rights did "not affect the validity of [the agent's] actions prior to the time he received notice that his right to retain Mason's papers was

gone." *Id*. at 429.  Accordingly, it held that "[t]he district court correctly refused to require the return of copies made prior to the demand by Mason's attorney." *Id*.  This holding applies to the card the Officer saw (and possibly seized, as discussed *infra*) prior to Ho's consent revocation.  No more need be said.

Even if we need to look beyond our circuit law to that of others, *Jachimko* and the case upon which it relies provide a sound basis for at least permitting the admission of the card. The majority erroneously distinguishes *Jachimko* on three bases: that there the illegal nature of the substance (marijuana plants) was readily apparent, unlike that of the card; that "the government acknowledges that Officer Simone must have established probable cause of criminal activity at the time of the revocation of consent in order to have seized the card"; and "that, on the facts of this case, probable cause to justify seizure of the card mirrors probable cause to arrest Ho."

First, *Jachimko* and the case upon which it relies do not turn expressly on obvious illegality of the item.  In *Jachimko*, an informant provided information to the DEA about persons engaged in indoor marijuana cultivation, but did not know of Jachimko's involvement.  The DEA supplied the informant with a

recording device and an alert button after he arranged to purchase marijuana plants from a suspect. The informant and the suspect entered Jachimko's house; upon the alert being activated, the agents knocked on Jachimko's door. He opened it, but tried to close it when the agents identified themselves. After arresting Jachimko and the suspect, the agents searched the house and seized marijuana plants.

The district court granted Jachimko's motion to suppress the plants. The Seventh Circuit vacated and remanded for analysis under the "consent once removed" doctrine, applicable when "the agent (or informant) entered at the express invitation of someone with authority to consent, at that point established the existence of probable cause to effectuate an arrest or search, and immediately summoned help from other officers." *Id*. at 299 (internal quotation marks and citation omitted).

Because the case was remanded, the court commented also on Jachimko's consent revocation contention, noting that, "if Jachimko attempted to withdraw his consent after [the informant] *saw* the marijuana plants, he could not withdraw his consent." *Id*. (emphasis added). In support, it relied on its decision in *United States v. Dyer*, 784 F.2d 812 (7th Cir. 1986).

After Dyer consented to his luggage being searched, agents discovered a box. When asked what was in it, Dyer responded that

it was an automobile part, and gave permission to open the box. Inside, an agent found another box. Without asking for further consent, the agent opened the second box; inside was a can in which the agent found a clear plastic bag containing cocaine.

On appeal, Dyer asserted that his consent extended only to his luggage and the first box, and not to the second box containing the cocaine. The Seventh Circuit held that, "where a suspect does not withdraw his valid consent to a search for illegal substances before they are discovered, the consent remains valid and the substances are admissible as evidence." *Id*. at 816. The admissibility of Ho's plastic card is confirmed by the Seventh Circuit cases.

In the alternative, even if *Jachimko* and *Dyer* turn on the obvious illegality of the item, that does not make them distinguishable. Officer Simone testified that, "[w]hen [he] first located the card, it was obvious it was some type of contraband or something", and denied that it was only upon finding the magnetic strip that he thought the card was fraudulent.

As for the second area of disagreement on this seen before revocation subissue, unlike the majority, I do not read the Government's brief as "acknowledg[ing] that Officer Simone must have established probable cause of criminal activity at the time

of the revocation of consent in order to have seized the card."

The Government asserts that, "once the contraband was found, Ho could not then retroactively withdraw or limit the scope of the search." It then cites **Jachimko**, for its holding that, "where a suspect does not withdraw his valid consent to a search for illegal substances before *they are discovered*, the consent remains valid and the substances are admissible as evidence." **Jachimko**, 19 F.3d at 299 (emphasis in original) (citing **United States v. Dyer**, 784 F.2d at 816). Restated, **Jachimko** looks to pre-consent revocation "discovery", not pre-consent revocation "seizure". Following these statements, the Government does state that, "at the time Ho attempted to grab the portfolio from Officer Simone's hands, Officer Simone already had probable cause to suspect the card was fraudulent and to seize the card from Ho's possession." I read this as an alternative basis for the seizure, not as a further explanation of **Jachimko**.

Finally, the majority's conclusion that, "on the facts of this case, probable cause to justify seizure of the card mirrors probable cause to arrest Ho" is erroneous for two reasons. First, the evidence indicates that, *before* Ho revoked consent, the Officer had already seized the card, by removing it from the portfolio. The Officer testified on cross-examination that, "[w]hen [he] first located the card, it was *obvious* it was some

-47-

type of contraband or something, that is when I controlled the folder." (Emphasis added.) He was asked on redirect: "When you were going through the portfolio and discovered the white piece of plastic, did you know at this time before he pulled it back that that was a fraudulent credit card?" The Officer responded, "*When I removed it from the folder*, I suspected that it was." (Emphasis added.)

If, as this testimony indicates, the card was seized before Ho revoked consent, the Officer did not need probable cause to again seize it post-arrest. (Once again, it would have been best, to say the least, for this fact issue to have been clarified in district court. Doubtless, it would have been, had the revocation pre-probable cause issue been properly raised.) Accordingly, if Ho did not revoke his consent before the card was seized by the Officer, his consent remains valid and the seized card is admissible.

The second basis for my not agreeing that "probable cause to justify seizure of the card mirrors probable cause to arrest Ho" is because Ho's consent dramatically alters the landscape. I am not willing to concede that, when an item *suspected* to be illegal is seen during a consent search, it is subject to post-consent revocation seizure only if probable cause, as that term is defined *supra*, existed to seize it when first seen. My research

reveals no case on point.  To the contrary, *see*, *e.g.*, ***United States v. Guzman***, 852 F.2d 1117, 1122 (9th Cir. 1988) ("evidence found before [consent] revocation will not be suppressed").  In short, probable cause is not the gateway for the admission of evidence found during a consent search.  To so hold runs contrary to applying the Fourth Amendment within its defining "unreasonableness" standard.

### III.

I would uphold the seizure, or at least the admissibility of the white card seen (and possibly seized) before revocation of consent.  If nothing else, I would remand to reopen the suppression hearing, so that evidence can be received on the uncertain or missing facts, such as whether Officer Simone seized the card before consent was revoked.  Therefore, I respectfully dissent.