UNITED STATES of America,
Appellant,

v.

Denise SMITH, Appellee.

No. 525, Docket 80–1258.

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1981.

Decided March 12, 1981.

Peter E. Scheer, Washington, D. C. (William C. Bryson, Richard D. Endler, Barry J. Finkelstein, U. S. Dept. of Justice, Washington, D. C., Richard J. Arcara, U. S. Atty., W. D. New York, Buffalo, N. Y., on brief), for appellant.

Herbert L. Greenman, Pack, Grashow, Palmer, Greenman, Hurley & Ball, Buffalo, N. Y., for appellee.

Before KAUFMAN, OAKES and MES-KILL, Circuit Judges.

OAKES, Circuit Judge:

Appellee Denise Smith was charged with various federal narcotics offenses in the Western District of New York. Before trial, Smith moved to suppress testimony and other evidence derived from three searches—two at Buffalo International Airport and one at a private residence in Buffalo. The United States District Court for the Western District of New York, John T. Curtin, Chief Judge, granted Smith's motion with respect to all three searches. Pursuant to 18 U.S.C. § 3731, the Government now appeals the lower court's determination, made after a hearing, that both airport searches—the security search by airline employees and the subsequent search by law enforcement officers—violated Smith's Fourth Amendment rights. We reverse on the ground that both searches were reasonable.

This appeal turns on the proper standard for determining the legality of security searches which are conducted by airline personnel ostensibly to prevent hijackings. The facts surrounding the checkpoint search in this case, as found by the district court, are as follows. After having trailed Smith and a male companion to the Buffalo airport, an agent of the Drug Enforcement Administration (DEA) notified representatives of airline security staffs that a narcotics investigation was in progress. The DEA agent gave the airline security personnel a description of Smith and her companion, and asked the airline employees to obtain identification if possible of Smith and the man traveling with her. In addition, the DEA agent mentioned both that either the woman or the man might be carrying a large sum of cash and that it would be helpful if security personnel could obtain serial numbers from the bills.

When Smith went through the airline security checkpoint on her way to a departure gate, she turned over her shoulder bag for passage through an X-ray device. The airline employee monitoring the device's viewing screen noticed a large, unidentified mass at the bottom of the bag. She called the attention of Susan Helwig, the airline security employee who actually searched the bag, to the unidentified mass which Helwig later testified "had the shape of [a]

plastic explosive." Smith was advised that the bag would have to be searched if she wished to board the plane; she nodded affirmatively. On looking into the bag, Helwig observed a large stack of bills at the bottom, but did not remove the bills or note any of their serial numbers. Helwig then referred Smith to a local police officer standing nearby. Smith refused his offers of an escort to the plane and, at her destination, from the plane.

In assessing the constitutionality of the search of Smith's shoulder bag by airline personnel, the district court mistakenly applied a subjective or quasi-subjective test, which included an inquiry into the motives of the airline security personnel. Understandably perturbed by the DEA agent's attempts to use the airline security system to further a narcotics investigation, the judge below commented that "[s]uch advance warning ... inevitably would influence the judgment of the security personnel in deciding whether or not to search a passenger," *United States v. Politano*, 491 F.Supp. 456, 461 (W.D.N.Y.1980). The district court rejected the argument that the search would be acceptable under the Fourth Amendment if there were an adequate basis for it, independent of the DEA agent's advance "tip" to the airline security workers. Instead, the court stated that under the circumstances in the instant case, the Government must not only show an adequate basis for the search but must also make a special demonstration of a "fairly compelling" basis for the search. *Id.* at 462. Concluding that the Government had failed to make such a demonstration, the district court granted Smith's motion to suppress.

■ Although we fully comprehend the district court's concern over the DEA agent's actions, we believe that the proper standard for judging the constitutionality of a search is a totally objective one, *see* *Scott v. United States*, 436 U.S. 128, 135–38, 98 S.Ct. 1717, 1722–23, 56 L.Ed.2d 168 (1978); *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). We therefore agree with Judge Feikens of the Eastern District of Michigan who held

on very similar facts that "the court must look to all the circumstances to determine whether there was an independent and adequate basis for the security search in its own right," *United States v. Scott*, 406 F.Supp. 443, 445 (E.D.Mich.1976). This court articulated a test in *United States v. Albarado*, 495 F.2d 799 (2d Cir. 1974), for determining the reasonableness of a challenged airport security search. In that case we asked "how may the search be limited commensurate with the performance of its functions? Put another way, what is the minimal invasion of privacy consistent with the need for the further investigation?" *Id.* at 808.

In *Albarado* a passenger had been subjected to a "pat-down" frisk after he had activated a magnetometer. A package of counterfeit bills wrapped in aluminum foil was found on his person. The answer we gave on the facts in that case was that the initial magnetometer screening was reasonable in light of the "absolutely minimal invasion in all respects of a passenger's privacy weighed against the great threat to hundreds of persons if a hijacker is able to proceed to the plane undetected...." *Id.* at 806. The subsequent frisk, however, was found to be improper because it was not as limited in its obtrusiveness as it might have been. Before resorting to a highly intrusive "pat-down," airline officials could have taken less extreme steps such as asking the passenger to remove all metal items from his person and then to pass through the magnetometer a second time. *Id.* at 808–09.

■ The initial X-ray screening of Smith's shoulder bag, like the initial intrusion in *Albarado*, was reasonable when weighed in the balance against the danger of a hijacking. The further search of the bag by airline employee Helwig was justified by the presence on the television screen of an unidentified mass at the bottom of the bag. When Helwig looked inside and saw that the object in Smith's bag was a stack of bills, Helwig neither removed the money nor noted a serial number. This search by hand was a minimal invasion of

privacy consistent with the need to investigate whether the unidentified mass was dangerous. Our determination that this two-step search was reasonable is also supported by two airport search cases decided in this circuit after *Albarado*. *United States v. Edwards*, 498 F.2d 496, 500–01 (2d Cir. 1974), held that a general search of carry-on luggage was reasonable, provided the intrusion is exactly tailored to the security threat which in the case of hijacking involves guns, explosives, and the like. See also, *United States v. Williams*, 516 F.2d 11, 12 (2d Cir. 1975), ("implied consent" to search a piece of carry-on baggage because baggage may be consigned to the baggage compartment).

On this appeal the Government also objects to the district court's finding that the subsequent search at the airport, conducted by law enforcement officers, was also unreasonable under the Fourth Amendment.[1] We agree with the Government that the second search was supported by probable cause—even without the information obtained from the checkpoint search that Smith was carrying a large quantity of cash. After Smith boarded her flight, a DEA agent and a local police officer followed her onto the plane, told her that they wanted to question her about the money, and requested that she leave the aircraft with them. Before the flight departed, they took Smith into a room away from other passengers, where she refused to answer questions about the money in her bag, although upon request she dumped the money on the table so that the agents could inspect the cash that she was carrying. Smith then reboarded the plane.

 At the time of this search, the law enforcement officers knew that an undercover DEA agent had purchased heroin that afternoon from one Pasquale Politano at Politano's house for $44,000 in cash; that Smith had entered Politano's house carrying a large shoulder bag shortly before the

drug transaction and had been driven to the airport by Politano shortly after the sale took place; that Smith's airline ticket showed that she had flown from New York City to Buffalo earlier that day and was scheduled to return to New York immediately; and that Smith had altered her appearance at the airport by changing her clothing and hairstyle. These facts known to the Government agents were sufficient " 'to warrant a man of reasonable caution in the belief that' an offense has been or is being committed," *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (citing *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)). When added to that was the information that she had a large amount of cash in her carry-on bag, the probable cause for the second search is clear. We note further that exigent circumstances justified the warrantless nature of the search. By the time the Government had learned all the facts catalogued above, Smith was about to leave with the evidence in hand on the flight from Buffalo to New York City, a flight so brief that it would no doubt have been difficult and risky, if not impossible, for DEA agents to obtain a warrant in time for a search when the plane landed in New York.

Thus, neither the search by the airline security personnel nor the search by the Government agents violated Smith's constitutional rights. The judgment below therefore is reversed, with directions to deny Smith's motion to suppress testimony and other evidence derived from the two searches.

Judgment reversed.

---

1. The district court's holding under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), that the second search came about by exploitation of the prior illegal search by airline personnel falls with our holding that the prior search had a proper basis. Alternatively, however, the district court found that the subsequent search lacked probable cause.