E. GRADY JOLLY, Circuit Judge:
The sole issue addressed in this Fourth Amendment warrantless search and seizure case is whether the police officer had probable cause to arrest A1 Dac Ho before Ho revoked his voluntary consent to search his *934 portfolio. Based on the explicit testimony from the suppression hearing, we conclude that, at the time Ho withdrew his consent, the officer did not have probable cause to arrest Ho, and thus lawfully could not continue the warrantless search of Ho’s portfolio as a search incident to arrest. The evidence obtained after Ho revoked his consent was the fruit of an unconstitutional search, and we therefore reverse the district court’s ruling on Ho’s motion to suppress, vacate Ho’s plea of guilty, and remand for further proceedings not inconsistent with this opinion.
I
On the morning of February 20, 1995, Lieutenant Gerard Simone and another officer, members of the New Orleans International Airport Narcotics Interdiction Unit of the Jefferson Parish Sheriffs Office, were conducting a surveillance of a flight from Los Angeles.[1] The officers alerted to the defendant, Al Dac Ho, a passenger on the flight, because he walked briskly down the concourse, had no carry-on luggage, and made no attempt to claim any checked luggage. The officers approached Ho, identified themselves, and asked Ho to produce his ticket. Ho produced a one-way ticket purchased with cash. Ho consented to a search of his person, including a small leather portfolio he was carrying. Ho told the officers that he would be in New Orleans for approximately two weeks and that his sister was bringing his luggage on a later flight.
The next day, a concerned citizen advised Officer Simone that Ho had purchased a cash one-way airline ticket to Los Angeles departing that morning at 8:15 a.m. Officer Simone, accompanied by two other officers, approached Ho as the flight was boarding. Ho gave his consent to a search of his person and his portfolio. During the search of the portfolio, Officer Simone focused on a blank, white plastic card the size and shape of a credit card. Ho immediately struggled to retrieve the portfolio when the officer found the card. Officer Simone testified that it was obvious that Ho did not want him to look further at the portfolio when Ho attempted to retrieve the portfolio. The officer was able, however, to retain the portfolio. Upon further investigation of the white plastic card, Officer Simone discovered that the card had a magnetic strip on the back. The officers then arrested Ho for possession of a counterfeit credit card. After they arrested Ho, the officers searched the rest of the portfolio and found another similar blank credit card, along with seventeen counterfeit travelers checks and several pieces of paper with what appeared to be credit card account numbers on them.
II
Ho was charged with one count of transporting a fraudulent credit card in interstate commerce and one count of knowingly possessing counterfeit securities. He filed a motion to suppress the fruits of what he asserted was an illegal search conducted by Officer Simone. Ho argued that the search was illegal because Simone did not have a warrant and Ho did not initially consent to the search. The government filed an opposition to Ho’s motion, and the district court conducted a suppression hearing at which both Officer Simone and Ho testified. At the conclusion of the hearing, counsel for Ho argued that even if Ho had consented to the search, he effectively withdrew that consent by attempting to retrieve the portfolio from Officer Simone before the officer had probable cause to continue the search without Ho’s consent and without a warrant.[2]
*935 The district court denied Ho’s motion to suppress, stating summarily that it was compelled to deny the motion after weighing the credibility of the two witnesses. Ho then entered a plea of guilty to the indictment, conditioned upon his ability to appeal the district court’s denial of his motion to suppress. The court sentenced Ho to ten months’ imprisonment to be followed by three years of supervised release. Ho timely filed his notice of appeal.
Ill
We begin our consideration of this appeal from the premise that “warrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions.” United States v. Cardenas, 9 F.3d 1139, 1147 (5th Cir.1993), cert. denied, — U.S. -, 114 S.Ct. 2150, 128 L.Ed.2d 876 (1994). One such exception to the warrant requirement exists for searches incident to a lawful arrest. United States v. Barlow, 17 F.3d 85, 89 (5th Cir.), cert. denied, — U.S. -, 115 S.Ct. 148, 130 L.Ed.2d 88 (1994). A warrantless arrest must be based on probable cause. United States v. Wadley, 59 F.3d 510, 512 (5th Cir.1995).
Although the challenged search in this case occurred immediately prior to Ho’s arrest, this does not prevent the search from being considered incident to a lawful arrest, Rawlings v. Kentucky, 448 U.S. 98, 109-11, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); United States v. Hernandez, 825 F.2d 846, 852 (5th Cir.1987), cert. denied, 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988), as long the fruits of the search incident to the arrest are unnecessary to support probable cause for the arrest. 448 U.S. at 109-11 & n. 6, 100 S.Ct. at 2564 & n. 6. “If the arresting officers lacked probable cause and the arrest is invalid, evidence discovered as a result of the arrest is subject to suppression under the Fourth Amendment as the ‘fruit’ of an illegal arrest.” 59 F.3d at 512. Officer Simone’s continued search of Ho’s portfolio after the revocation of consent was therefore constitutional only if the officer had probable cause to arrest Ho.[3] The sole issue for us to address is thus whether Officer Simone had probable cause to arrest Ho at the time that Ho revoked his consent.[4]
A
“Probable cause is determined by an objective test: it cannot be established simply by showing that the police subjectively believed that probable cause existed....” United States v. Cooper, 949 F.2d 737, 744 (5th Cir.1991), cert. denied, 504 U.S. 975, 112 S.Ct. 2945, 119 L.Ed.2d 569 (1992).
Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer’s knowl *936 edge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. Although probable cause requires more than a bare suspicion of wrongdoing, it requires ‘substantially less evidence than that sufficient to support a conviction.’
Wadley, 59 F.3d at 512 (quoting United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir.) (internal citation omitted), cert. denied, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990)). The facts and circumstances “must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrant-less search.” 894 F.2d at 1438 (citation omitted). The existence of probable cause is a mixed question of fact and law. 59 F.3d at 512. We review the factual findings supporting the district court’s probable cause determination for clear error. Id. The ultimate determination of probable cause, however, is a question of law subject to de novo review. Id.
A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional. United States v. Roch, 5 F.3d 894, 897 (5th Cir.1993) (citing United States v. De La Fuente, 548 F.2d 528, 533 (5th Cir.), cert. denied sub nom., Stewart v. United States, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977)). In a case such as this one, however, in which the officer acted without a warrant, the government bears the ultimate burden of proving that the officer had probable cause. Id.
B
The district court’s order refers to credibility choices in denying the motion to suppress. Although credibility choices were crucial to the issue of initial consent, a review of the record reveals no material dispute as to the facts necessary to resolve the legal question of probable cause that is before us today. Officer Simone testified that Ho had revoked his consent[5] when the officer first located the white plastic card in the portfolio.[6] He also testified that he did not find the magnetic strip on the back of the card until after Ho had revoked his consent.[7] As the facts are undisputed, the only issue before us is the district court’s ultimate legal determination that Officer Simone had probable cause to arrest Ho based on his discovery of a white piece of plastic the size and shape of a credit card in Ho’s portfolio.
In reviewing the record, the question, of course, is not whether Officer Simone subjectively believed—as he stated on redirect examination [8]—that he had probable cause before Ho revoked consent. Cooper, 949 F.2d at 744. Instead, the question is whether “the totality of facts and circumstances within *937 [his] knowledge at the moment of [revocation we]re sufficient for a reasonable person to conclude that [Ho] had committed or was committing an offense.” Wadley, 59 F.3d at 512. We can agree that the record supports a legal conclusion that a reasonable person with Officer Simone’s knowledge and experience would have had some suspicion — as distinguished from probable cause to believe— that the white piece of plastic was fraudulent before Ho’s revocation of consent.
A review of Officer Simone’s testimony as a whole reveals in the clearest tones the importance of the magnetic strip to his determination that the card was fraudulent. On direct examination by the government, Officer Simone testified:
Q. When you noticed the small white plastic card you found, did you know what that was, from your experience as a police officer?
A. In the past I encountered those cards and cards like that one, which were blank, had the magnetic strips on the rear of them. And they were later determined to be fraudulent credit cards.
Tr., at 11 (emphasis added). Crucially, this testimony reveals the specific factors, based on Officer Simone’s experience, which would warrant a conclusion that the card was fraudulent. On cross-examination, he testified:
Q. Isn’t it true, an examination of the card, after the brief struggle where you saw the magnetic strip, indicated to you that this was contraband?
A. That’s correct.
Q. All that occurred after he made it clear he was not consenting to this search?
A. When I first located the card, it was obvious it was some type of contraband or something, that is when I controlled the folder.
* * * :¡í • * si*
Q. It was the examination of the metal strip after that was the indication that this was—
A. Well, in the past I had encountered cards the same size and shape that were, in fact, fraudulent, saw the card, I suspected it was a fraudulent credit card.
Tr., at 21-22 (emphasis added). Although Officer Simone made an effort to backpedal after admitting that it was the discovery of the magnetic strip that led him to believe that the plastic card was fraudulent, he still could say nothing more specific than that “it was obvious it was some type of contraband or something” and that he “suspected” it was fraudulent. Furthermore, Officer Simone testified that his arrest report indicated that he knew the card was fraudulent only after discovering the magnetic strip:[9]
Q. In your report, isn’t it true when you detailed the events of the day, you say after gaining control of the folder you examined the card, you noticed the magnetic strip on the rear and this indicated to you this card was of a fraudulent nature?
A. That’s correct.
Tr., at 21-22. He did not deny, back away from or attempt to explain this critical admission. Thus, taken as a whole, Officer Simone’s testimony dictates the legal conclusion that the discovery of the magnetic strip after Ho revoked his consent was an essential element of the probable cause determination for an officer with Officer Simone’s knowledge and experience.
Other factors also buttress the conclusion that a reasonable person with Officer Simone’s knowledge and experience would not have had probable cause to believe that criminal activity was afoot when Ho revoked his consent. First, the government, on whom the burden was placed to justify this war-rantless search, Roch, 5 F.3d at 897, presented no explanation why a white plastic card the size and shape of a credit card in a portfolio, standing alone, is sufficient to give a reasonable person probable cause to believe that it is a fraudulent credit card. The absence of evidence on this point is especially striking in the light of the ubiquity of plastic “swipe” cards in our modern society — for locks on hotel room doors, office buildings, gates and garages, telephones and check cashing — which often are plain on one side. Second, the government elicited almost no *938 testimony from which to gauge the extent of Officer Simone’s knowledge and experience in the area of credit card fraud. In fact, the government presented no information about his career other than his service in the Narcotics Interdiction Unit at the time of the arrest. Third, as a member of the Narcotics Unit, Officer Simone was on the lookout for drugs and not counterfeit credit cards.[10] In the same vein, it is also clear, based on Ho’s encounter with Officer Simone the previous day, that Officer Simone suspected Ho of drug trafficking, not credit card fraud; in other words, there was no predicate background in the investigation to support the criminal character of the card. Fourth, Officer Simone did not arrest Ho until after he regained control of the portfolio and actually discovered the magnetic strip on the back of the card.
IV
We emphasize that probable cause is more than a “bare suspicion” of wrongdoing. Viewing the record as a whole, we are convinced that the government did not satisfy its burden of proving that a reasonable person with Officer Simone’s knowledge and experience would have had probable cause to arrest Ho when Ho revoked consent based on the totality of facts and circumstances within Officer Simone’s knowledge at that time. The arrest being unlawful, it follows that all evidence obtained pursuant to the search incident to that arrest, including the search immediately prior to the arrest, is inadmissible as the fruit of an unlawful search.[11] Wadley, 59 F.3d at 512. We therefore REVERSE the district court’s ruling on the motion to suppress, VACATE Ho’s plea of guilty, and REMAND for further proceedings not inconsistent with this opinion.
REVERSED, VACATED and REMANDED.

. The officers of the Narcotics Interdiction Unit routinely conduct surveillances of incoming flights from Los Angeles because of Los Angeles' status as a major distribution point for narcotics.

. The dissent argues that we should apply the plain etror standard to this claim because Ho presents it for the first time on appeal. We are at a complete loss to understand how the dissent can claim that the matter was not preserved in the district court. First, unlike the defendant in United States v. Alvarado-Saldivar, 62 F.3d 697, 699 (5th Cir.1995), Ho argued this claim “in open court” and the district court responded, "I understand that. I think it is in order for to you [sic] point that out to me. I take it in to consideration as well." Tr., at 47 (emphasis added). Second, unlike the defendant in United States v. Maldonado, 42 F.3d 906, 910-11 (5th Cir.1995), the record reveals that Ho established the factual basis for the issue in his examination of Officer Simone. See infra. Third, the state failed to raise the dissent's plain error argument in its *935 brief to this court; it addressed the claim on the merits. Although the dissent is correct in pointing out that "this does not preclude our exploring this issue sua sponte," we find the state’s “failure" to raise it strongly suggests that the state itself considered the claim properly to be preserved for appeal and that the state felt neither "ambushed” nor “sandbagged” on appeal. In our view, therefore, it is totally inapt to review this claim for plain error.

. The government relies on the Seventh Circuit's decision in United States v. Jachimko, 19 F.3d 296, 299 (7th Cir.1994), to argue that because the officer had already “discovered” the card before Ho revoked his consent, the subsequent warrantless seizure of the card from the portfolio was valid. The court in Jachimko stated, "Where a suspect does not withdraw his valid consent to a search for illegal substances before they are discovered, the consent remains valid and the substances are admissible as evidence.” Id. (citation omitted). We have yet to address the Seventh Circuit's "discovery” rule, cf. Mason v. Pulliam, 557 F.2d 426, 429 (5th Cir.1977) (holding that revocation of consent does not require government to return copies of business records taken before revocation), and we find it unnecessary to do so today. First, Jachimko is distinguishable from the present case because the illegal nature of the substance in that case, marijuana plants, was readily apparent on first sight. The illegal nature of the plastic card was not immediately obvious here. Second, the government acknowledges that Officer Simone must have established probable cause of criminal activity at the time of the revocation of consent in order to have seized the card. Third, we conclude that, on the facts of this case, probable cause to justify seizure of the card mirrors probable cause to arrest Ho.

. Based upon the facts adduced during the suppression hearing, the district court’s finding that Ho voluntarily consented to the search is not clearly erroneous.

. A consent which waives Fourth Amendment rights may be limited, qualified, or withdrawn. Mason, 557 F.2d at 428-29.

. Officer Simone testified:
Q. Was it obvious to you at the point when you had opened the portfolio and he attempted to grab it, that at that point he did not want you to look at it any further?
A. Yes, it was. I had already discovered the card.
Q. He consented, it was clear to you he was not consenting at that point to anything further?
A. That's correct.
Tr., at 20.

. Officer Simone testified:
Q. Officer, isn’t it true that you examined the card and noticed the magnetic strip on the card after he attempted to pull it away and after you regained control of it?
A. When I first found the card is when he tried to pull it away, after I regained control of the folder is when I looked at it and found the magnetic strip on the rear of it.
Q. So, before he tried to pull it away, all you saw, the front of the card?
A. It was a totally blank white card.
* Hi * * ifc *
Q. Before you tried to controlled [sic] it, all you saw was a blank credit card?
A. That’s correct.
Q. A blank piece of plastic?
A. Size and shape of a credit card; correct.
Tr., at 20-21.

.Officer Simone testified:
Q. Whenever Mr. Ho pulled the portfolio back from the position when you examined and you already discovered the white piece of plastic, did you have probable cause in your mind to seize the credit card?
A. Yes, I did.
Tr., at 23.

. The police report is not a part of the record.

. We think this distinction is important because the piece of plastic would have had much less immediate criminal significance to a reasonable person with the knowledge and experience of an officer whose day-to-day activities focused on investigating illegal drug trafficking.

. In the alternative, the government argues for the first time on appeal that exigent circumstances justified the continued search of Ho’s portfolio after Ho revoked his consent because Ho was about to leave on the flight to Los Ange-les. The government relies primarily on the Second Circuit’s decision in United States v. Smith, 643 F.2d 942 (2d Cir.), cert. denied, 454 U.S. 875, 102 S.Ct. 350, 70 L.Ed.2d 182 (1981). The court in Smith held that exigent circumstances justified the warrantless search of an airplane passenger’s bag because “Smith was about to leave with the evidence in hand on the flight.” 643 F.2d at 945. Unlike this case, however, the search in Smith was supported by probable cause. Id. Because the government did not have probable cause before Ho revoked his consent, exigent circumstances did not justify the subsequent war-rantless search of Ho.