

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2003

# USA v. Wilmore

Precedential or Non-Precedential: Non-Precedential

Docket 02-1582

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Wilmore" (2003). *2003 Decisions.* Paper 840.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/840

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-1582
_____

UNITED STATES OF AMERICA

v.

QUINTIN WILMORE,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Court Judge: William H. Yohn, Jr.
(D.C. Criminal No. 01-cr-00198)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 14, 2003

Before: ROTH, FUENTES, Circuit Judges, and ALDISERT, Senior Circuit Judge

(Opinion Filed: January 30, 2003)
_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

Quintin Wilmore pleaded guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B), and was sentenced to 120 months imprisonment. Wilmore appeals the final judgment of the District Court and raises two issues: 1) did the District Court err in denying his motion to suppress the physical evidence; and 2) did the District Court err in determining his criminal history category.

We have jurisdiction pursuant to 28 U.S.C. §1291. We exercise de novo review of the District Court's legal determination on the suppression issue and defer to that court's factual findings unless clearly erroneous. Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Roberson, 90 F.3d 75, 77 (3d Cir. 1996). Because Wilmore did not preserve the sentencing issue, we review the District Court's criminal history category determination for plain error. See Fed. R. Crim. P. 52(b); United States v. Knight, 266 F.3d 203, 207 (3d Cir. 2001). For the reasons stated below, we will affirm.

I.

On March 19, 2001, Drug Enforcement Agency ("DEA") Special Agent Leo Mount received a telephone call from Task Force Officer Edward Matis. Officer Matis, assigned to the DEA Dallas-Fort Worth Airport Unit, informed Agent Mount that a confidential source had reported to him that a possible drug courier named Quintin Wilmore was traveling from Phoenix, through Dallas, to Philadelphia. The confidential source described Wilmore as a black male in his 20's, 5'11" tall, weighing approximately 200 pounds, wearing black pants, a black jacket, and a black bandana. Airline records indicated that Wilmore was on flight 1750 from Dallas to Philadelphia, and that he had checked one bag. Wilmore had reserved a one-way

2

ticket at 11:43 p.m. on March 18, and purchased the ticket with $1,100 in cash at 1:53 a.m. on March 19, 2001, at the ticket counter in Phoenix for a 2:30 a.m. departure.

DEA agents arrived at the Philadelphia International Airport in time to meet Wilmore's flight. Wilmore was observed exiting the jetway and walking to the baggage claim area. His appearance was consistent with the description given by the confidential source except for the color of his pants, which were dark green rather than black. Before claiming his bag, Wilmore used a courtesy phone to make one call. While Wilmore was on the phone, DEA agents located his bag and placed it in a dog-sniff line-up. The dog did not alert to the presence of drugs in the bag.

After Wilmore claimed his bag, DEA Task Force Officers James Corbett and William Knightly approached him while he was standing on the sidewalk just outside the terminal. The officers identified themselves, explained that they were members of a drug interdiction unit, stated their purpose, and asked to speak with Wilmore. The officers spoke in a conversational tone and did not block Wilmore's passage. Wilmore agreed to speak with the officers. He stated that he had just arrived from Phoenix and produced his ticket, which was in his name and showed that he had traveled to Philadelphia from Phoenix via the Dallas-Fort Worth airport. At the officers' prompting, Wilmore produced identification showing a Tucson address. Wilmore explained that he lived in Phoenix and had moved to Tucson approximately two months earlier. He stated that he was in Philadelphia to visit friends, but could not recall their address. Wilmore said that he was planning to stay in Philadelphia for several days.

Upon further questioning, Wilmore revealed that he was a car detailer and that he did not own his own business. Wilmore said that the bag at his feet was his and that he packed it

3

himself.    Officer Corbett thought that Wilmore exhibited signs of nervousness during their conversation, including a rigid stance, soft voice, and pulsing neck.    Officer Corbett asked Wilmore for permission to search his bag and person for narcotics.[1]    Wilmore responded, "Sure, go ahead."

Officer Corbett kneeled down and searched Wilmore's bag, but found no drugs. Officer Corbett then reached toward Wilmore to conduct a pat down search.    As Officer Corbett reached toward him, Wilmore took at least two steps backward.    When Wilmore turned away, Officer Corbett grabbed his jacket and felt a hard object on his back.    Wilmore spun out of his jacket and then fled, leaving Officer Corbett holding his jacket.    Based upon his experience, Officer Corbett believed that the object he felt on Wilmore's back was probably a kilogram of cocaine.

Wilmore fled from Officers Corbett and Knightly in the direction of another officer stationed in the area.    Wilmore stumbled when that officer reached for him.    His stumble caused his sweatshirt to rise up, revealing to Officer Knightly that Wilmore had gray duct tape around the small of his back holding some objects in place.    Officer Knightly believed the objects to be bricks of cocaine based on his experience.    Wilmore was apprehended by the officers, and the objects taped to him were found to be three bricks of cocaine.

A criminal complaint was filed in the Eastern District of Pennsylvania, followed by an indictment issued by the grand jury.    Wilmore was charged with possession with intent to distribute cocaine in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B).    Wilmore moved the

---

[1]Wilmore testified during the suppression hearing that he only heard the officer ask to search his bag, not his person .  The District Court found that Officer Corbett had asked to search both.  On appeal, Wilmore does not dispute the District Court's finding.

District Court to suppress the physical evidence in the case. On July 16, 2001, following a hearing, Judge Yohn orally denied the motion. Wilmore pleaded guilty to the charge, but reserved his right to appeal the denial of his suppression motion. On February 25, 2002, the District Court sentenced Wilmore to 120 months imprisonment.

II.

The cocaine taken from Wilmore was seized in the course of an investigatory stop by DEA Task Force Officers Corbett and Knightly. We must determine if the District Court properly denied Wilmore's motion to suppress the cocaine on the ground that the stop did not violate the Fourth Amendment.

Whether a seizure has occurred within the meaning of the Fourth Amendment turns on the question of whether a "reasonable person would feel free to 'disregard the police and go about his business' . . ." Florida v. Bostick, 501 U.S. 429, 434 (1991) (citing California v. Hodari D., 499 U.S. 621, 626 (1991)). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968). It is well established that no seizure has occurred when an officer approaches an individual in a public place, identifies himself as a law enforcement agent, asks questions, asks to search a person's bags, or explains that he is conducting a narcotics investigation. See Florida v. Royer, 460 U.S. 491, 497 (1983); United States v. Thame, 846 F.2d 200, 202-03 (3d Cir. 1988).

Here, Wilmore was not seized when the task force officers approached him outside the terminal. The officers merely identified themselves, stated their purpose, asked Wilmore a few questions, and asked for his consent to search his bag and his person. This exchange

5

occurred in a public area in a conversational manner and Wilmore was not physically restrained. In fact, Wilmore was not seized until the moment when Officer Corbett grabbed his jacket because that was the first point at which the officers used physical force or a show of authority to restrain Wilmore.

The next question in this analysis is whether Officer Corbett violated the Fourth Amendment by grabbing Wilmore's jacket. A law enforcement officer may conduct an investigatory stop of a person if the officer has a reasonable, articulable suspicion that the person is involved in criminal activity. Terry, 392 U.S. at 22. Alternatively, police may undergo a warrantless search pursuant to the voluntary consent of a person authorized to consent to the search with or without reasonable suspicion or probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 227-28 (1973); United States v. Kim, 27 F.3d 947, 955 (3d Cir. 1994).

There is no dispute on appeal about the fact that Wilmore consented to a search of his bag and his person. Wilmore contends, however, that he withdrew his consent to search his person by stepping back from Officer Corbett when the officer reached toward him.

A consent that waives Fourth Amendment rights may be limited in scope and may be withdrawn by an unequivocal act or statement that clearly expresses the individual's desire not to be searched. Florida v. Jimeno, 500 U.S. 248, 252 (1973): Kim, 27 F.3d at 957. We find that Wilmore's step or two backward after Officer Corbett stated his intent to pat him down and began reaching toward him was not an unequivocal withdrawal of consent. Instead, Wilmore's movement was ambiguous, and could reasonably have been construed as taking flight rather than withdrawing consent. C.f. United States v. Ho, 94 F.3d 932, 934 (5th Cir.

6

1996) (defendant withdrew consent by struggling to retrieve portfolio from agent); United States v. Carter, 985 F.2d 1095, 1096 (D.C. Cir. 1993) (defendant withdrew consent by snatching paper bag detective had recovered from inside tote bag which defendant had consented to have searched and saying that he did not want paper bag to be searched).

In fact, despite Wilmore's insistence that the officers understood his movement to be a withdrawal of consent, Officers Corbett and Knightly both testified at the suppression hearing that they construed Wilmore's steps backward to be flight. Officer Corbett testified: "I would call it fleeing. I mean, he didn't say hey, whoa, stop, I don't want you to search me. He fled." (App. 78a) Officer Knightly testified: "My impression was that it was an attempt to flee all along." (App. 93a) The District Court was in a better position than this Court to assess the credibility of the officers. We will therefore not disturb the District Court's finding that Officer Corbett's grabbing of Wilmore's jacket was valid pursuant to Wilmore's consent.

The District Court was also correct that the officers had reasonable suspicion sufficient to warrant a Terry frisk when they seized him. Reasonable suspicion is determined by examining the totality of the circumstances. United States v. Sokolow, 490 U.S. 1, 7-8 (1989). The officers had a reasonable suspicion based upon: (1) the tip that Wilmore was a drug courier; (2) his purchase of a one-way plane ticket with cash shortly before the flight; (3) his vague answers about his travel plans; and (4) his nervousness. In addition, when Officer Corbett reached toward Wilmore to pat him down, Wilmore took flight. "Headlong flight . . . is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). As Wilmore was spinning away, Officer Corbett felt an object on Wilmore's back that he suspected was

7

cocaine based on his experience. As Wilmore was fleeing, Officer Knightly saw the objects strapped to Wilmore's back, which he also suspected to be cocaine based on his experience. Therefore, when the officers seized Wilmore after he fled, the totality of the circumstances amounted to a reasonable suspicion that Wilmore was engaging criminal activity.

Thus, the initial contact between Officer Corbett and Wilmore was valid because it was consensual and the later seizure was valid because the officers had a reasonable suspicion that Wilmore was engaging in criminal activity. After the officers found the drugs taped to Wilmore's body they had probable cause to arrest him. Because we find that there was no Fourth Amendment violation, we will affirm the District Court's denial of Wilmore's motion to suppress the physical evidence.

### III.

The District Court sentenced Wilmore to 120 months' imprisonment after calculating his criminal history category as a IV based upon a total of eight criminal history points. We must determine if the District Court correctly calculated Wilmore's criminal history category.[2]

Wilmore argues that he was erroneously placed in criminal history category IV rather than III because one criminal history point was wrongly assessed based on a DUI conviction where no evidence existed that he was represented by counsel and another point was wrongly

---

[2]The determination of Wilmore's criminal history category will not affect the length of his prison term because he was sentenced pursuant to a mandatory minimum term of 120 months. Nonetheless, Wilmore raises this point on appeal because his criminal history category may affect his designation within the United States Bureau of Prisons and would affect his sentence if he were to be convicted of violating the terms of his supervised release.

assessed for a more than ten-year old trespass conviction. Without the erroneous inclusion of these two points, Wilmore's points would have totaled six, which would reduce his criminal history category to III.

The Government concedes that Wilmore's trespass conviction should not have been counted because it was time-barred under the sentencing guidelines. See U.S.S.G. §4A1.2(e)(2). The Government argues, however, that the criminal history point for Wilmore's DUI conviction was not wrongly assessed.

No criminal history points should be awarded for a conviction if the right to counsel was denied in that proceeding. United States v. Escobales, 218 F.3d 259, 261 (3d Cir. 2000). During a sentencing proceeding, the only cognizable collateral attacks on a prior conviction are: "(1) where the statute or sentencing guideline under which the defendant was sentenced provides for right to bring such a collateral attack at sentencing; and (2) when the defendant's collateral attack, at sentencing, is based on an allegation this his right to counsel, as described in Gideon v. Wainwright, 372 U.S. 335 (1963), was violated during the underlying state court proceeding." Escobales, 218 F.3d at 260.

Wilmore argues that his collateral attack on his state DUI conviction is cognizable because it is based on a violation of his right to counsel. With respect to Wilmore's DUI conviction, however, the Pre-sentence Report ("PSR") states only that the Probation Officer was unable to verify Wilmore's representation in that case. Wilmore did not object at sentencing to the assignment of one criminal history point for this conviction. He did not assert that he was denied representation in that proceeding. In fact, he does not now assert that he was actually denied representation. Rather, he seeks remand on the issue because the PSR

9

notes that his representation could not be verified. We decline to remand for a collateral attack based on the notation in the PSR absent a credible allegation by Wilmore that he was denied representation during the state proceeding leading to his DUI conviction. Although Wilmore is correct that one criminal history point was added erroneously for his time-barred trespass conviction, he is not correct that a point was erroneously added for his DUI conviction. A reduction of his total criminal history points from eight to seven will not change his placement within criminal history category IV; in order to be reduced to category III, he would need to have no more than six criminal history points. Accordingly, the District Court's addition of one point for the trespass conviction is harmless error. We therefore affirm.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Julio M. Fuentes
Circuit Judge

10