**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 8, 2012

Lyle W. Cayce
Clerk

No. 10-51152

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ANGEL NOEL MARIONI-MELENDEZ

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:10-CR-219-1

Before REAVLEY, DAVIS and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant Angel Noel Marioni-Melendez (Marioni) appeals his conditional guilty plea conviction for aiding and abetting possession with intent to distribute more than 100 kilograms of marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(B). As a condition of his guilty plea, Marioni reserved the right to challenge the denial of his motion to suppress the marijuana seized from his vehicle when he was arrested. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-51152

I.

At the suppression hearing, Border Patrol Agent Joseph De Santiago[1] testified that he was driving eastbound on Highway 166 in Texas at 6:00 a.m., about 30 miles from the Mexico border. A westbound Dodge Durango drove past him, and he noted that it was not a law enforcement vehicle. Although a resort and other attractions were nearby, he did not expect to "hardly get any . . . traffic at all" in the area other than other law enforcement at that time of the morning. He turned around, caught up to within five to six car lengths of the Durango, and read its license plate. He noticed that it was an out-of-state plate—from New Mexico. He gave the plate information to the radio operator and asked for a vehicle registration check and a stolen vehicle check. He "backed off a little," and as he was waiting for the records check to come back, he observed the Durango slow down to about 25 to 30 miles per hour. It was still dark, and the nighttime speed limit on the highway was 55 or 65 miles per hour. Agent De Santiago also noticed the vehicle swerve a couple of times into the opposing lane, which gave him "the impression that he was – he was watching me for some reason,"

The computer check disclosed nothing significant. Nevertheless, in light of the proximity to the border, the out-of-state license plate, and the vehicle slowing down and swerving, the agent decided to stop the Durango about five minutes after he first began to follow it.

Agent De Santiago exited his vehicle, approached the Durango on the passenger side, and shined a flashlight into the back windows. He saw "what looked like bundles up to the roof in the back seat of the vehicle and the trunk side." The bundles looked like burlap sacks. Agent De Santiago testified that he had seen burlap sacks previously in his year and a half of experience as a

---

[1] The criminal complaint spells the agent's last name "De Santiago." The hearing transcript spells it "de Santiago."

2

No. 10-51152

Border Patrol agent and that each sack typically contains 50 to 70 pounds of marijuana. In fact, in his time with the Border Patrol, he had never seen burlap sacks used for anything other than illegal drug smuggling, but he acknowledged that there could be innocent uses for them. In addition, he testified that while it would require about 100 miles of highway travel to reach formal U.S.–Mexico border crossings from that location, there were some informal crossings about 30 miles from there. He testified that the Border Patrol had also found multiple "lay-up spots" in the area, where illegal aliens had either left their trash and gone farther into the United States or dropped off illegal drugs and headed back to Mexico. He also testified that Border Patrol agents had apprehended a truck transporting marijuana on the same highway two weeks earlier at about 8:30 a.m. Thus, although he did not actually see marijuana in the Durango, he believed that the burlap sacks contained marijuana.

Agent De Santiago returned to his own vehicle without further inquiry and called for backup. Using his vehicle's loudspeaker, he ordered the driver out of the Durango and placed him under arrest by handcuffing him and putting him in the back seat of his enforcement vehicle. He identified Marioni in court as the driver. He ordered the passenger out of the Durango, and he had her sit in the front seat of the enforcement vehicle.

At least 15 minutes later, backup arrived, and Agent De Santiago gave the driver and passenger *Miranda* warnings. Agent De Santiago and another agent opened the door of the Durango, and only then did he smell marijuana. The officers seized the burlap sacks, which were found to contain marijuana.

Marioni argued that all of the evidence, including the marijuana and post-arrest statements, should be suppressed because there was no reasonable suspicion for the initial stop and no probable cause for the arrest. The court denied the motion. Marioni appeals.

3

No. 10-51152

## II.

In considering a ruling on a motion to suppress, this court reviews the district court's legal conclusions, including its ultimate conclusion as to the constitutionality of the law enforcement action, de novo. *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002). Although the defendant typically has the burden of proving that the evidence was obtained in violation of his constitutional rights, the burden shifts to the government if the search or seizure occurred without a warrant. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). Accordingly, the government had the burden of proving, by a preponderance of the evidence, that the warrantless arrest of Marioni and search of his vehicle were constitutional. *Id.*

This court reviews the district court's factual findings for clear error, viewing the evidence in the light most favorable to the prevailing party, in this case the government. *Chavez*, 281 F.3d at 483. A finding of fact is clearly erroneous if this court is left with a definite and firm conviction that a mistake has been committed. *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir.), *cert. denied,* 131 S. Ct. 158 (2010).

## III.

Marioni argues that the district court erred in denying his motion to suppress because Agent De Santiago lacked probable cause to arrest him and that the search of his vehicle incident to that arrest was likewise unlawful. He does not challenge the initial stop for lack of reasonable suspicion. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). In *Arizona v. Gant*, the Supreme Court held that "circumstances unique to the vehicle context" justify a search (incident to a "lawful arrest") of "the passenger compartment of an

No. 10-51152

arrestee's vehicle and any containers therein" when "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 129 S. Ct. 1710, 1719 (2009) (internal quotations marks and citation omitted).

Marioni concedes that the search was justified *if* his arrest itself was lawful, but contends that Agent De Santiago lacked probable cause for his arrest. Whether the search of Marioni's vehicle was lawful therefore depends on whether Marioni's arrest was lawful. "It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause." *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Id.* "The arresting officer need only know with 'fair probability' that the defendant committed the felony, which requires more than a 'bare suspicion' but less than a preponderance of the evidence." *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (citation omitted). "If the arresting officers lacked probable cause and the arrest is invalid, evidence discovered as a result of the arrest is subject to suppression under the Fourth Amendment as the fruit of an illegal arrest." *United States v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996) (internal quotation marks and citation omitted).

In the context of criminal cases arising out of roving patrols in border areas, the Supreme Court has set out a non-exhaustive list of factors to consider in totality of the circumstance evaluations to determine if reasonable suspicion is present to support a temporary investigative stop of a vehicle. *United States v. Lopez*, 911 F.2d 1006, 1009 (5th Cir. 1990).

> Some of the factors that can be considered include the characteristics of the area, the proximity to the border, traffic patterns, the agent's previous experience with criminal traffic, the type and appearance of the vehicle, and the driver's behavior.

No. 10-51152

*Id.* (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-84 (1975)).  While this case presents a question of whether Agent De Santiago had probable cause to arrest Marioni after the investigatory traffic stop, those factors remain relevant to our inquiry.

While this case presents a close call, based on the information available to Agent De Santiago, we conclude that the district court did not err in finding that probable cause was present in this case.  The stretch of Texas Highway 166 where the stop was made  is about 100 miles by highway from the nearest formal U.S.-Mexico border crossing.  However there are some informal crossings about 30 miles from the location.  In addition, Border Patrol has found multiple "lay-up spots" in the area, where illegal aliens had either left their trash and gone further into the United States, or dropped off illegal drugs and headed back to Mexico.  The agent testified that on this portion of Texas Highway 166, he would not expect to see any vehicles except law enforcement at 6 a.m., the time he first noted defendant's car.   Border Patrol agents had apprehended a truck transporting marijuana on the same highway two weeks earlier at about 8:30 a.m.  The defendant's car had out-of-state plates – from New Mexico.  Agent De Santiago testified that a "good number" of drug apprehensions involve out-of-state vehicles.  Prior to the stop, when De Santiago backed off the vehicle while waiting on the records check to come back, he observed the vehicle slow down to 25 to 30 miles per hour (from 55 to 65) and swerve a couple of times which gave him the impression that the persons in the vehicle were watching him.  While the swerving of the vehicle and erratic speeds justified the investigatory stop, those and other cited factors also raised the suspicion that the vehicle was engaged in drug trafficking.

After the stop, when Agent De Santiago approached the vehicle and observed the bundles of burlap sacks stacked up to the roof in the back seat of the vehicle and in the trunk space, his suspicion was elevated to probable cause.

6

No. 10-51152

Agent De Santiago testified that in the majority of drug apprehensions he had handled in his year and a half with Border Patrol, burlap sacks were used to hold the marijuana. Each sack typically contains 50 to 70 pounds of marijuana. In fact, while on the job, he had never seen burlap sacks used for anything other than illegal drug smuggling. The quantity of sacks in an SUV is also suspicious.

Use of burlap sacks in drug transactions has been reported in other cases in this and other circuits. In *United States v. Worthington*, 544 F.2d 1275, 1278 (5th Cir. 1977), after other facts provided reasonable suspicion to detain a plane and its pilot, an agent saw burlap sacks containing "brick-like objects" in the plane and believed them to be marijuana based on past experience. This fact provided probable cause to believe the plane contained contraband justifying the arrest of the defendant. In *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1160 (10th Cir. 1995), the court found that the officer had probable cause to arrest the defendant after seeing burlap bags in the rear in a hatchback car. Officers in that case knew of the defendant's prior conviction for transporting marijuana, had information from a known informant that she was transporting drugs, and had observed the defendant engaged in activity that corroborated the informant's information and that was consistent with drug trafficking. Agent De Santiago, like the law enforcement personnel in these cases, did not have to be certain about the incriminating nature of the burlap bundles. It was sufficient that the presence of the burlap bags, in conjunction with other suspicious behavior by the defendants, gave rise to a reasonable belief that the defendant was committing an offense.

## IV.

Based on the foregoing facts, we conclude that the district court did not err in concluding that Agent De Santiago had probable cause to arrest the defendant or in denying his motion to suppress.

AFFIRMED.