# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50885

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

FRANCISCO JAVIER DEL HIERRO-VEGA,

    Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 23, 2019

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:16-CR-474-1

Before HIGGINBOTHAM, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:*

Francisco Javier Del Hierro-Vega appeals his conviction for aiding and abetting possession with intent to distribute marijuana, arguing the district court admitted evidence resulting from his unconstitutional arrest. We affirm the district court's denial of Del Hierro's motion to suppress.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-50885

## I.

Early in the morning of October 22, 2016, Homeland Security Investigations Special Agent Mike Wright answered a call from Border Patrol agents near Marfa, Texas. The agents had apprehended a group of five men in the desert transporting 298 pounds of marijuana in backpacks. Interviewing the smugglers at the Marfa Border Patrol Station, Wright learned that the group had been coordinating their smuggling operation with a facilitator in Mexico. With the smugglers' permission, Wright and his colleagues used the smugglers' cellphone to message the facilitator in Mexico, pretending to be members of the group. The ploy worked. The facilitator informed agents that two vehicles would meet them on the side of Highway 90 between Marfa and Alpine, one to carry the smugglers to Mexico, the other to continue onwards with the drugs. One of these vehicles would be a dark-colored, possibly brown, Ford Explorer. The second vehicle was not described. The facilitator assured them the drivers would bring food and water. The smugglers also provided Wright and his colleagues the phone number of one of the drivers whom the agents would later identify as Vincent Chavez—he had transported the smugglers during an earlier leg of the trip. The facilitator instructed the agents to wait until sunset for pick up.

At around 9 p.m., Wright and two fellow agents arrived at the designated pick-up spot, east of Highway 90's intersection with a pipeline. Meanwhile, near Marfa an agent identified a Ford Explorer fitting the description provided by the facilitator. By now agents had established direct communication with one of the drivers. When the driver communicated that he was stopping for gas at a Stripes station, Border Patrol Agent Adam Hershberger was told to surveil stations in Marfa. At around 10 p.m., Hershberger identified a brown Ford Explorer stopping at the station. Hershberger saw only one person, a Hispanic male, in the vehicle.

2

No. 17-50885

In an unmarked car, Agent Hershberger followed the Explorer as it headed from the gas station in the direction of Alpine, towards the pick-up location. The driver of the Explorer had difficulty locating the backpackers; eventually, he told the agents that "it was too hot, [with] too many vehicles . . . too many cops," and accordingly abandoned the rendezvous. The Explorer passed the pick-up location at around 10:30 p.m. and continued towards Alpine, with Agent Hershberger still on its tail. Agents told Hershberger to keep an eye on the vehicle because they were also "en route to go effect an arrest on the driver." Hershberger attempted to follow the Explorer, but traffic became heavier as Highway 90 crossed the windy section of the Paisano Pass between the pick-up location and Alpine, and Hershberger lost sight of the vehicle. The distance between the pick-up location and Alpine was about 15 miles, roughly a 15-minute drive. Unless the Explorer pulled onto a ranch road, it was headed for Alpine along Highway 90; so Hershberger continued there too.

It is not clear from the record how long the Explorer was out of Agent Hershberger's sight or exactly when he relocated the Explorer. At some point between 10:45 and 11:45 p.m., Agent Hershberger called his colleagues to notify them that he had relocated the Explorer in the parking lot of an AutoZone shop in Alpine. The three agents waiting on the side of Highway 90 were picked up and transported to Alpine. It took them about 30 minutes to join Agent Hershberger in Alpine.

The agents converged on the AutoZone parking lot at 11:45 p.m. When they approached the vehicle, agents found Vincent Chavez in the driver's seat and Francisco Javier Del Hierro-Vega in the passenger seat. According to Agent Will Weaver, who approached on the passenger side of the Explorer, in his experience it was not unusual for a "load vehicle" to have multiple occupants during smuggling operations, all involved in the crime. The agents

3

immediately arrested both men. Shortly after the arrest, the agents found two cellphones on the Explorer's console; calling the driver's number, they confirmed that one of the phones belonged to the driver. Agents handcuffed Del Hierro and immediately searched his person. Pushing the button on a key fob found in his pocket, they noticed the lights of a Ford Expedition flashing in a motel parking lot across the street. On closer inspection of the Expedition, agents saw a plastic bag within, containing drinks and food—five bottles of soda and two bags of Doritos. The agents surmised the Expedition was the second pick-up vehicle, and Del Hierro was the smuggling operation's second driver.

The agents seized the Expedition and transported Del Hierro to the Presidio County Jail for processing. At around 3 a.m., after discussing biographical questions—Del Hierro's name, address, family details—an agent Mirandized Del Hierro. Del Hierro invoked his right to counsel, at which point the agent stopped questioning him. Before the agent could leave the room, however, Del Hierro stated, "I have some questions for you." In response to Del Hierro's questions, the agent described the facts leading to his arrest. Del Hierro then volunteered an explanation for his presence in the Explorer: he had been en route to Chihuahua to visit family, fortuitously ran into Chavez, an old colleague, and stopped for a conversation in the parking lot.

Del Hierro was charged with aiding and abetting the possession of 100 kilograms or more of marijuana with intent to distribute. He moved to suppress all statements made after his arrest and all evidence resulting from the search of his person and his vehicle. Del Hierro argued that probable cause was lacking, therefore his arrest was unlawful. A magistrate judge presided over an evidentiary hearing, and afterwards issued a report and recommendation denying Del Hierro's motion. The district court adopted the magistrate judge's report and recommendation, finding that the agents had

No. 17-50885

probable cause to arrest Del Hierro and that evidence derived from his arrest was admissible. Del Hierro entered a conditional guilty plea, preserving the right to challenge the denial of the suppression motion. The district court sentenced him to 18 months' imprisonment and five years' supervised release. Del Hierro appealed.

## II.

We have jurisdiction to hear Del Hierro's appeal.[1] Del Hierro filed timely notice of appeal. When an appellant has preserved the argument, on an appeal from the denial of a motion to suppress, the court reviews questions of law de novo and the district court's factual findings for clear error.[2] The existence of probable cause is a mixed question of fact and law in which we review the factual findings underlying the probable cause determination for clear error, but review the legal question of whether those facts establish probable cause de novo.[3] "To the extent the underlying facts are undisputed," the court "may resolve questions such as probable cause and reasonable suspicion as questions of law."[4] The Government bears the burden to prove probable cause in support of a warrantless arrest.[5]

## A.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

---

[1] 28 U.S.C. § 1291; 18 U.S.C. § 3742.

[2] *United States v. Portillo-Aguirre*, 311 F.3d 647, 651–52 (5th Cir. 2002).

[3] *United States v. Hearn*, 563 F.3d 95, 102–03 (5th Cir. 2009).

[4] *Portillo-Aguirre*, 311 F.3d at 651–52 (quoting *Blackwell v. Barton*, 34 F.3d 298, 305 (5th Cir.1994)).

[5] *United States v. Ho*, 94 F.3d 932, 936 (5th Cir. 1996).

searches and seizures, shall not be violated."[6] "A . . . seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing."[7] Where government officials lack a warrant, an arrest is lawful only when supported by probable cause for the belief that the suspect committed a crime.[8] To evaluate whether a warrantless arrest was supported by probable cause, the panel should consider the events leading up to the arrest and decide "'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer,' amount to probable cause."[9] "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts,"[10] and "depends on the totality of the circumstances."[11]

The Court has held that an individual's presence in the company of a suspected criminal—even within a car—is insufficient standing alone to establish reasonable grounds to suspect participation in a crime.[12] However, when officials have probable cause to believe a criminal transaction has occurred, there is also probable cause to believe individuals present within the limited site of the criminal transaction are participants. In *Maryland v. Pringle*, following the lawful search of a car, a police officer found baggies of cocaine behind an armrest.[13] The officer arrested the vehicle's three occupants

---

[6] U.S. CONST. amend. IV.

[7] *Portillo-Aguirre*, 311 F.3d at 652 (quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000)).

[8] *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) ("A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause.").

[9] *Id.* at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

[10] *Id.* at 370–71 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

[11] *Id.* at 371.

[12] *United States v. Di Re*, 332 U.S. 581, 593 (1948) ("Presumptions of guilt are not lightly to be indulged from mere meetings.").

[13] *Pringle*, 540 U.S. at 367–69.

No. 17-50885

under suspicion of possession with intent to distribute the cocaine; all three denied association with the drugs.[14] One of the occupants, Pringle, moved to suppress confessions he made following his arrest on the grounds that the officer lacked probable cause to infer his participation in the offense merely from his presence in the car.[15] His motion was denied.[16] The Supreme Court affirmed the denial. Because the officer had probable cause to believe that a felony was committed in the "relatively small" spatial context of the car, the officer also had a basis to infer that Pringle was a participant: "a car passenger . . . will often be engaged in a common enterprise with the driver."[17] Given the absence of facts that would exclude Pringle as one of the participants in the offense, the Court held there was probable cause to infer Pringle was part of a common criminal enterprise.[18] The arrest was lawful, and so was admission of the evidence derived from it.[19]

**B.**

We consider the totality of the circumstances to evaluate probable cause. The parties agree that, when the agents converged on the brown Explorer in the AutoZone parking lot, the agents knew the following facts. Besides the five smugglers and the facilitator in Mexico, there were at least two individuals involved in the criminal enterprise in the Marfa–Alpine area, each driving a separate vehicle. The brown Explorer, identified by Agent Hershberger at the Marfa Stripes gas station, was likely one of the two vehicles. Hershberger saw

---

[14] *Id.* at 368–69.

[15] *Id.* at 369.

[16] *Id.*

[17] *Id.* at 373.

[18] *Id.* at 373–74.

[19] *Id.*

7

only one person in the brown Explorer immediately before the pick-up attempt—namely Chavez the driver. The driver of the Explorer then abandoned the pick-up attempt at around 10:30 p.m. Between leaving the Stripes station and losing Hershberger's surveillance along the highway, the brown Explorer did not stop. The brown Explorer was at large for some period between Agent Hershberger losing sight of it around 10:45 p.m. and his relocation of the vehicle at some point before around 11:15 p.m., the latest time at which Hershberger could have called the other agents for their arrival on the scene at 11:45, given the 30-minute transit time. At 11:45 p.m., Del Hierro and Chavez were occupants of that brown Explorer in the AutoZone parking lot.

The existence of probable cause is a question of probabilities[20]—not certainties—and given the totality of the circumstances,[21] the Government has carried its burden.[22] Although the agents did not have evidence indicating Del Hierro's presence within the brown Explorer during the pick-up attempt, they had sufficient evidence to infer his participation in the smuggling enterprise. Del Hierro was found in the car with Chavez, a suspected criminal for whom the agents had independent probable cause for an arrest. Del Hierro and Chavez were not meeting in "broad daylight" in a public area;[23] but near midnight, in an empty parking lot, behind the tinted windows of a brown Explorer recently involved in an attempted drug-smuggling rendezvous. Moreover, the agents knew that the brown Explorer had a longstanding involvement in the enterprise: it was involved in earlier legs of the overall

---

[20] *Id.* at 370–71 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

[21] *Id.* at 371.

[22] *See Ho*, 94 F.3d at 936.

[23] *Di Re*, 332 U.S. at 593.

smuggling operation. With five smugglers and nearly three hundred pounds of marijuana still awaiting pick up, the smuggling enterprise was likely not complete, even if the most recent pick-up attempt had been abandoned. There was a significant probability this vehicle and its occupants were still involved in a continuing criminal enterprise. Like defendant Pringle,[24] Del Hierro was found inside a vehicle that agents had good reason to believe was still involved in a criminal conspiracy. There was probable cause for this lawful arrest.

## III.

For these reasons, we AFFIRM the district court's denial of Appellant's motion to suppress evidence.

---

[24] *Pringle*, 540 U.S. at 373–74.